## Levi M. Louck, Appellant, *v.* Orient Insurance Company, of Hartford, Connecticut.

*Insurance—Fire insurance—Terms of policy.*

A fire insurance company receiving a property owner's money, and undertaking to indemnify him by a written contract descriptive of the subject against loss by fire, cannot plead ignorance of the palpable condition of that subject where there is no pretense of fraud, misrepresentation or concealment.

A policy of fire insurance described the property insured as " occupied by the assured as a distillery." It appeared that the distillery had been standing idle for about two and one half years and was not in operation at the date of the policy, or of the fire which destroyed the buildings. The policy contained a condition that the company should not be liable " if the insured has concealed or misrepresented any material fact or circumstance concerning this insurance or the subject thereof," or where the subject of insurance was a manufacturing establishment " if it ceased to be operated for more than ten consecutive days." The assured had an office on the premises which he occupied and in which he slept. It was not claimed that the assured represented that the distillery was in operation, or that he concealed from the company the fact that it was not then, and for years had not been in operation. *Held*, that the forfeiture clause had no application to the facts of this case, and that the court would not wrest language from its ordinary meaning to enforce forfeitures which are odious.

Argued May 21, 1896. Appeal, No. 373, Jan. T., 1896, by plaintiff, from judgment of C. P. York Co., Aug. T., 1895, No. 50, for defendant non obstante veredicto. Before WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Reversed.

Assumpsit on a policy of fire insurance. Before McPher-
son, J., of the 12th judicial district specially presiding.

The facts appear by the opinion of the Supreme Court.

The court reserved a point as follows:

In the case of the Orient Insurance Company the following
facts are undisputed:

Mr. Deininger was an insurance agent, doing a general
insurance business in this place. I understand that to be the
fact? . . . .

But he was not an agent of the Orient Insurance Company.
Messrs. White and Jessop were the general agents of that com-
pany in the city of York. Before the issuing of the policy in
suit, they had at various times done business with Mr. Dein-
inger in the following way: Intending insurers had applied to
Mr. Deininger for insurance. He was not able to place their
risks, but offered them to Messrs. White and Jessop, by whom
they were accepted and placed in companies whom they repre-
sented (the Orient Insurance Company among them). These
companies returned the policies to Messrs. White and Jessop,
by whom they were delivered to Mr. Deininger, who delivered
them to the assured; the premium reaching the company by the
same course. Upon such business Mr. Deininger was paid a
certain proportion of the commission allowed by the companies
respectively. This was the course pursued in effecting the in-
surance now in question. . . .

Upon these facts, and upon the provisions of the policy,
which is made a part of this reservation, we reserve the ques-
tion whether Mr. Deininger was so far an agent of the defend-
ant company as to be able to bind it by a waiver of any of the
conditions of the policy, either by statements in parol, or by
waiver in writing.

Verdict for plaintiff for $1,253.50. Subsequently the court
entered judgment for defendant non obstante veredicto.

*Error assigned* was in entering judgment as above.

*J. R. Strawbridge*, of *Geise & Strawbridge*, with him *Nevin
M. Wanner*, for appellant.—The ratification of the agent's acts
by the company may operate as a waiver of the forfeiture: Frank-
lin Fire Ins. Co. v. Massay, 33 Pa. 221.

The declaration of Deininger and of Jessop, that the former was not the regular agent of the company, will not relieve the company from responsibility for his acts, if by its course of dealing he was held out to the plaintiff as such : Arthurholt v. Ins. Co., 159 Pa. 1 ; Bole v. N. H. Fire Ins. Co., 159 Pa. 53 ; Kister v. Ins. Co., 128 Pa. 553 ; Susquehanna Mut. Fire Ins. Co. v. Cusick, 109 Pa. 157 ; McGonigle v. Ins. Co., 168 Pa. 1 ; Lebanon Mut. Ins. Co. v. Hoover, 113 Pa. 591.

No mere statement in the policy that the party negotiating the insurance shall be deemed the agent of the insured, and not of the company, will make him such, so as to relieve the company from responsibility for his acts, unless the insured is put on his guard in advance of the negotiations for the policy, which was not done in this case : Meyers v. Lebanon Fire Ins. Co., 156 Pa. 420 ; Mix v. Ins. Co., 169 Pa. 639 ; Gould v. Ins. Co., 134 Pa. 570 ; Eilenberger v. Mut. Fire Ins. Co., 89 Pa. 464 ; May v. Western Assurance, 27 Fed. Rep. 260.

As a matter of law, the company is presumed not only to have ascertained for itself and to know the condition and description of the property that it insures, but also the nature and character of the business carried on upon the premises insured : Western & A. Pipe Line v. Home Ins. Co., 145 Pa. 346 ; Gould v. Dwelling House Co., 134 Pa. 570 ; Burson v. Fire Assn. of Phila., 136 Pa. 267. Where no questions are asked the insured by the agent, as to matters which might work a forfeiture of the policy, their existence does not void the policy, does not make them known : Dwelling House Co. v. Hoffman, 125 Pa. 626.

Where the insured deals with a broker as agent of the company, and receives the policy from him, and pays the premium to him in that belief, the company is estopped from denying his agency in those matters : Lycoming Fire Ins. Co. v. Ward, 90 Ill. 545 ; Gates v. Penna. Fire Ins. Co., 10 Hun, 489 ; Partridge v. Fire Ins. Co., 17 Hun, 95 ; May v. Western Assur. Co., 27 Fed. Rep. 260 ; Mullin v. Vermont Ins. Co., 15 Ins. L. J. 561 ; Union Ins. Co. v. Murphy, 17 W. N. C. 243 ; Meadowcraft v. Fire Ins., 61 Pa. 91 ; McGonigle v. Ins. Co., 168 Pa. 1 ; Bole v. Fire Ins. Co., 159 Pa. 53.

Public policy requires that insurance companies be required to deal with their customers with entire frankness. It is not the province of courts to indulge in conjectures favorable to such

insurance companies, as are disposed upon mere technicalities, to avoid payment of honest claims : Western & A. Pipe Lines v. Home Ins., 145 Pa. 346 ; Kister v. Ins. Co., 128 Pa. 566.

Forfeitures are odious in law : Helme v. Ins. Co., 61 Pa. 107 ; Franklin Fire Ins. v. Brock, 57 Pa. 74. The provision against ceasing to operate a manufacturing establishment, is not so violated as to forfeit the policy, if the use of the premises at the time of the fire is practically the same as at the time of the insurance : Lebanon Mut. Fire Ins. Co. v. Erb, 112 Pa. 149 ; Bole v. Fire Ins. Co., 159 Pa. 53 ; Humphrey v. Hartford Ins. Co., 15 Blatch. 504 ; Couch v. Rochester Ger. Ins. Co., 25 Hun, 469 ; American Cent. Ins. Co. v. McCrea, 8 Lea, 513 ; Luce v. Dorchester Fire Ins. Co., 105 Mass. 297 ; Hardman v. Fireman's Ins. Co., 20 Fed. Rep. 594 ; Franklin Fire Ins. v. Gruver, 100 Pa. 266 ; Lebanon Fire Ins. Co. v. Leathers, 20 W. N. C. 107. A forfeiture could not attach to the distillery building proper, and the plaintiff would be entitled to recover the amount of his insurance of the other buildings : Loomis v. Rockford Ins. Co., 45 N. W. 813 ; Rogers v. Phœnix Ins. Co., 121 Ind. 570 ; Pratt v. Dwelling House Mut. Ins. Co., 41 N. Y. S. Rep. 303 ; Clark v. New England Ins. Co., 6 Cush. 346 ; Schuster v. Dutchess Co. Ins. Co., 102 N. Y. 260 ; May v. Western Assurance Co., 27 Fed. Rep. 260 ; Allemania Fire Ins. Co. v. White, 11 Atl. Rep. 96.

*H. C. Niles*, of *Niles & Neff*, with him *Charles Bergner*, for appellee.—The consideration being single and entire the contract must be held to be entire, though its subject be several and independent items : Fire Association v. Williamson, 26 Pa. 196 ; Gottsman v. Pa. Ins. Co., 56 Pa. 210.

A broker is the agent of the insured when he applies for insurance as Deininger did in this case to White & Jessop : Pottsville Mut. Fire Ins. Co. v. Minnequa Springs Imp. Co., 100 Pa. 142 ; Commercial Union Ass. Co. v. Elliott, 12 Cent. 668 ; Scott v. Sun Fire Office, 133 Pa. 322 ; Phœnix Ins. Co. v. Spiers, 87 Ky. 285.

It is the duty of the insured to read his policy, and failure to do so after the paper has been in his possession for several months will not excuse his ignorance as to the conditions of the

policy therein contained: Swan v. Watertown Ins. Co., 96 Pa. 37; Dowling v. Ins. Co., 168 Pa. 240.

OPINION BY MR. JUSTICE DEAN, July 15, 1896:

On February 1, 1894, defendant issued to plaintiff a policy of insurance against fire in the sum of $1,150, for the term of one year. The risk covered four buildings, described thus in the policy: "$750 on his two and a half story frame shingle roof building, 28 × 34 feet, occupied by the assured as a distillery, situated in Monaghan township, York county, Pa., near Bowmansdale. $250 on his iron clad building, 36 × 50 feet, and frame addition 18 × 20 feet, occupied as a bonded warehouse, situated about seventy-five feet east of distillery. $75.00 on his frame shingle roof hogpen, situated between distillery and warehouse, being about ten feet from the former and eleven feet from the latter. $75.00 on frame shingle roof building occupied as an icehouse, situate about thirty feet north of distillery." Total, $1,150.

On the 6th day of June, 1894, the property was wholly destroyed by fire. There was no question raised as to the fact of loss, or that preliminary proof of it, as required by the policy, had been made. But the policy contained this condition: "This entire policy shall be void if the insured has concealed or misrepresented in writing or otherwise any material fact or circumstance concerning this insurance or the subject thereof. . . . Or if the subject of the insurance be a manufacturing establishment, and it be operated in whole or in part at night later than ten o'clock, or if it cease to be operated for more than ten consecutive days."

The undisputed testimony was, that the distillery was not in operation at the date of the policy or of the fire, and had been standing idle for about two and a half years; nor was it the intention of the owner to presently put it in operation. The policy in suit was a renewal of a previous one for one year in the same company, which was about expiring. Both the original and the renewal policy were delivered to plaintiff by L. T. Deininger; through him the business was transacted, and he received the premium from defendant; White & Jessop were the regularly authorized agents of defendant, and through them Deininger obtained the policies, and by them they were counter-

signed before delivery. As a fact found by the jury, Louck informed Deininger, both at the date the policy was issued and afterwards, that the distillery was not in operation, and he did not know when it would be; to which Deininger replied, it made no difference.

The court submitted the evidence to the jury as to the value of the property destroyed, and also as to whether the insured informed Deininger that it was not in operation as a distillery at the date of insurance and afterwards. But the court, on an interpretation of the policy, assumed, and so instructed the jury, that the description of the property imported a distillery in operation at the date of insurance; if, however, the company had notice, by virtue of the notice to Deininger, that then and afterwards it was not in operation, that would be a waiver of the right to forfeit for a violation of the ten day clause. And further, whether the testimony as to notice to and knowledge on part of Deininger was notice to the company, was a question of law, which question the court reserved. The jury having found for plaintiff on the evidence as submitted, the learned judge of the court below, afterwards, in opinion filed, entered judgment for defendant, notwithstanding the verdict, on the question reserved.

From that judgment plaintiff appeals, assigning five errors to the rulings of the court on the point reserved. They are all practically disposed of by a determination of the fifth.

Assume, with the learned judge of the court below, Deininger occupied no such position towards the company as authorized him to waive written conditions of forfeiture, and that notice to him was not notice to the company; put completely aside the testimony which the jury believed, that Louck notified him expressly that the distillery was not in operation at the date of the policy, and had not been for more than two years, and that he had no intention of presently operating it, then, how stands the case? The learned judge says:

" This policy is not binding upon the company, either because the risk was not truly represented, so that the company was deceived into issuing a policy upon a subject of insurance materially different from the true subject; or, if the insured is to be taken as bound by the description in the policy and if therefore he is estopped to deny that the distillery was in operation

when the policy was issued, then the contract is not binding, because the manufactory ‘ceased to be operated for more than ten consecutive days.’”

And this constitutes appellant’s fifth assignment of error.

But putting aside Louck’s testimony, as we have already suggested, we cannot see any evidence tending in the least to show the risk was not truly represented, and that the company was not fully aware of the condition of the property when it issued its policy. The description in the policy is, that the property is “occupied by the assured as a distillery;” that is, the building containing the stills, the bonded warehouse seventy-five feet distant, of which the government had the keys; the hogpen eleven feet off, and the icehouse thirty feet. The insured had an office on the premises, which he occupied and in which he slept. There is not one word in the description suggesting the stills were then in operation; the purpose of the buildings is plainly indicated by the word “distillery,” but nothing further. It must be borne in mind, these are the written words of the company inserted in the contract framed by it, and are therefore to be taken as fully describing what they supposed they were insuring. It is not intimated that Louck represented the distillery was in operation, or that he concealed from the company the fact that it was not then and had not been in operation for years. But the company, instead of saying, if they so believed, “A distillery now being operated by the assured,” or “now being run by the assured,” or using language of like significance, adopts the very words which describe the exact condition of the property, a distillery, merely occupied by the assured. It was a distillery and intended by the owner as such, but not operated, and he did not know when it would be started; he occupied it then as he had for years before, and as he did for months afterwards, although in the whole time, he did not distil a quart of whisky.

And without misrepresentation or concealment, this is just what the company, by its policy, insured, an occupied idle distillery, no matter what the scope of the authority of their agent. The agent did not frame the policy and insert the description; that is the company’s instrument. Every contract must be interpreted in view of the subject of it, and the surroundings of the parties at the date of it. A company receiving a property ·

owner's money, and undertaking to idemnify him against fire by a written contract descriptive of the subject, cannot plead ignorance of the palpable condition of that subject, where there is no pretense of fraud, misrepresentation or concealment. We might as well assume that one who, by written contract, buys a farm could defend against payment of the purchase money, because it was upland instead of meadow, as he thought; for misrepresentation or concealment which misleads, equity will relieve, but not for ignorance of that which is before his eyes, and which he must see. Parties to such a contract as this are conclusively presumed to have seen that which was obvious.

If at the date of the contract, the distillery had been running, and had afterwards stopped for more than ten days, the forfeiture clause might have been invoked; this, not because the word "occupied" implied it was in operation, but because, in view of the situation of the subject of the contract at the date of it, such would have been the reasonable interpretation. But how can this language defeat the contract, when the manufactory was not in operation at the date of insurance? It could not cease, when it had not commenced. Therefore, the forfeiture clause has no application to the facts of this case, and we will not wrest language from its ordinary meaning to enforce forfeitures which are odious.

The judgment is reversed, and it is directed that judgment be entered on the verdict for plaintiff.