Home Insurance Company *v.* North Little Rock Ice & Electric Company.

Opinion delivered June 15, 1908.

1. Evidence—contents of writing—best evidence.—Parol evidence of the contents of a writing was inadmissible as not being the best evidence. (Page 543.)

2. Insurance—when agent's knowledge not imputed to principal.— Where an insurance agent has a personal interest, known to the assured and not known to the insurer, which might induce him to keep a matter concealed from his principal, and he does keep the matter concealed from the principal, to the latter's prejudice, the assured cannot rely upon the doctrine that the knowledge of the agent in such matter is the knowledge of the principal. (Page 543.)

3. Same—failure to operate factory—forfeiture.—Where a policy of fire insurance stipulated that "if the subject of insurance be a manufacturing establishment, * * * and it cease to be operated for more than ten consecutive days," the entire policy shall be void, the fact that the building insured had formerly been an ice factory, but had ceased to be operated for more than ten days, did not cause

a forfeiture of the policy if the building was not being used as an ice factory at the time it was insured. (Page 544.)

4.  SAME—CONSTRUCTION OF AMBIGUOUS POLICY.—A clause in a policy of fire insurance which refers to the building insured as "occupied as an ice factory" will not be construed to mean that the building would be occupied as an ice factory, as it is capable of meaning that the building had been previously used and operated as an ice factory. (Page 545.)

5.  SAME—CONSTRUCTION OF POLICY.—Language in a policy of fire insurance which refers to machinery, engines, and boilers and says: "and all appurtenances necessary to and used in their business" does not imply that the business of the insured is that of manufacturing. (Page 547.)

Appeal from Pulaski Circuit Court; Edward W. Winfield, Judge; affirmed.

*Rose, Hemingway, Cantrell & Loughborough,* for appellant.

1.  The knowledge of the Faucette Brothers will not be imputed to the appellant, their interests being at variance with those of the principal. Mechem on Agency, §. 723; 68 N. W. (Mich.) 215; 47 Pac. (Kan.) 511; 14 N. Y. 91; 25 Pac. (Wash.) 331; 72 Miss. 46; 17 So. 83; *Id.* 282; 19 Fed. 14; 4 Berryman's Ins. Dig. 1283. See also 87 Fed. 29; 89 Fed. 619; 60 Am. Rep. 736; 80 Ill. App. 288; 85 Mo. App. 50; 162 Mo. 146; 9 S. W. 182; 22 C. C. A. 378; 52 *Id.* 126; 83 Fed. 48; 110 Fed. 830; 112 Ga. 823; 173 Ill. 414; 98 Ill. App. 399; 62 Pac. 705.

2.  The stipulation that the policy should be void "if the subject of insurance be a manufacturing establishment, and it be operated in whole or in part at night later than ten o'clock, or if it cease to be operated for more than ten consecutive days," is without question valid. 27 N. E. 6; 153 Mass. 475; 1 Marvel (Del.) 32; 29 Atl. 1039; 112 Cal. 548; 36 Wash. 520; 77 N. W. 648; 82 N. W. 45; 29 N. W. 443; 121 Fed. 937; 146 Fed. 695; 90 N. Y. 16; 115 N. Y. 287; 116 N. Y. 322; 109 Mich. 699; 67 N. Y. 283; 118 N. Y. 165.

*J. W. Blackwood,* for appellee.

1.  There are no representations, warranties or statements either in the policy or in the evidence showing that the property insured was a manufacturing establishment. The statement that the building was *occupied* as an ice factory was no represen-

tation nor warranty that it would be *operated* as such. Moreover, this clause, being one of numerous printed conditions in the policy prepared by the company, is to be construed most strongly against the insurer. The term "occupied" is not synonymous with "operated." 33 L. R. A. 714; Ostrander on Ins. 412, 419. As to what is a manufacturing establishment and whether it has "ceased to be operated" within the meaning of the policy, see 3 MacArthur 412; 18 Fed. 584; 135 Mass. 262; 23 N. E. 989; 62 S. W. 146; 26 L. R. A. 316; 112 Pa. 149, 159; 28 Atl. 205; 73 Am. St. Rep. 533; 17 N. E. 771; 40 Am. St. Rep. 68; 8 Atl. 424; 11 Atl. 96; 52 Ill. 61; 147 N. Y. 478; 43 Am. Rep. 138; 97 Ga. 44; 52 Ill. 53; 36 Mich. 289.

2. While, as a rule, an agent cannot act in a dual capacity, yet if he is authorized by the insurance company to write the policy, or if he writes it and the company accepts the premiums and ratifies his acts, the company cannot avoid the policy. 76 Ark. 180; 2 Clement's Fire Insurance, (Ed. 1905) Rules 92-96; Ostrander on Ins. 154-159; 31 S. W. 1100; 37 Pac. 909; 4 N. W. 350; 31 S. W. 1103. Faucette Brothers were fully authorized to take this insurance by the general agent, Meyers, who authorized them to place it with appellant, and both the application and their daily reports notified him as general agent of all the facts. In the light of the facts, it is unreasonable to say that Meyers did not know of the ownership of the property. Appellant is chargeable with notice of the facts. Ostrander on Ins. 171; 43 Mich. 116.

3. The law presumes that the company issuing the policy knows the conditions, uses and title of the property insured. 8 How. (U. S.) 248; 2 Pet. 49; 8 *Id.* 582; *Id.* 557; 3 Kent 237; 9 Barn. & Cress. 693; 1 Marsh. on Ins. 450; 10 Pick. 402; 1 Pet. 160; 1 Marshall on Ins. 481, 482; 3 Burr. 1905; 1 Har. & Gill 295; 5 Hill, 192; 6 Cranch, 281; 6 Taunt. 338; 12 La. 134; 18 L. R. A. 139; 46 Mich. 56; 66 Mich. 98; 52 Mich. 131; 53 Mich. 306; 35 Mich. 481; 89 Fed. 936; 62 N. W. 857.

MORRIS M. COHN, Special Judge. The Home Fire Insurance Company, of Fordyce, Ark., was sued in the court below by the appellee for the amount of an award made by two appraisers, under an agreement of submission signed by the parties in interest; the Insurance Company after the award refusing to pay the same,

it having reserved all rights, except the right to contest the amount of sound value and the loss and damage which the appellee had sustained, in the agreement referred to. It placed its ground of refusal solely upon the ground that the appellee had disregarded the terms of the policies under which its claim originated, which provided that "if the subject of insurance be a manufacturing establishment, and it be operated in whole or in part at night later than ten o'clock, or if it cease to be operated for more than ten consecutive days," the entire policy should be void, unless otherwise provided by agreement indorsed thereon or added thereto. It alleged merely that the appellee was a manufacturing establishment, and that it had ceased, during the life of the policies, to be operated for more than ten consecutive days, without indorsement on the policy or in any paper added thereto of permission so to do, and without notification.

A trial was held, resulting in a verdict and judgment for the appellee for the amount of the award, in addition to the amount of the statutory penalty of twelve per cent., and an attorney's fee was fixed by the court, for which judgment was rendered.

The policies all contained the same description of the risk covered thereby, which was given in five separate clauses, as follows:

"$5,000.00—On their one-story brick, composition roof building, including foundations and cold storage vaults, *occupied as an ice factory*, situated No. 'A' '1' Main Street, Block 31, sheet 63, Sanborn's Map of Argenta, Arkansas.

"$13,500.00—On their fixed and movable machinery of every description, including engines, boilers and their connections, settings and their foundations, metal stacks, tanks, pumps, refrigerating and ice machines, filters and condensers, ice cans, piping and pulleys, tools, hose, *and all appurtenances and appliances necessary to and used in their business.* All while contained in the above described building.

"$500.00—On their wagons and buggies.

"$100.00—On their wagon and buggy harness.

"$100.00—On their office furniture and fixtures, all while contained in the above described building."

At the trial J. P. Faucette testified in behalf of the appellee,

and stated that he was its president at the time of the fire and for four or five years before, and at the time the policies were issued; that he was a member of the firm of Faucette Bros., who were the local agents of the Home Insurance Company, at Argenta, Ark., where the risk was located; that his brother, W. C. Faucette, was the other member of that firm; that each of them owned eight thousand dollars of the capital stock of the Ice & Electric Company, the entire capital stock being $32,000; that the said Faucette Bros. were also directors of the said Ice & Electric Company, and he was its general manager at the time the policies were issued; that they, said Faucette Bros., issued the policies in suit, as local agents at Argenta, upon forms furnished in blank to them by G. L. Meyers & Company, general agents of the Insurance Company at Memphis, Tenn.; that these policies were renewals of previous ones issued by the said G. L. Meyers & Company in other companies; that the property of appellee had not been operated as an ice factory since October, 1904; that he knew of this fact at the time the policies were issued; that at that time the stables and places for the wagons and the horse and mules and the office were all in the building described in the policy; that a bookkeeper was in charge of the books; that orders were taken there for coal, and ice was delivered there by wagon and by car load, there being a switch connected with the premises; that, at the time of the closing of the manufacturing, the machinery was in good condition, and he had afterwards personally looked after it; that the factory ever since it had been opened in 1896 had operated only for the six months during the hot season, suspending in October; that there was no change in the use of the building after October 15, 1904, and that they were open for business, as usual, on the day the fire occurred.

G. L. Meyers for the appellant testified: that his firm were the general agents of the Insurance Company for Argenta and elsewhere; that they sometimes sent around inspectors to inspect risks, but he could not remember sending any inspector around to examine the risk in question; that his agent had adjusted a loss in the neighborhood; that he had no notice or knowledge at the time the policies in suit were issued up to the time of the fire that the building and machinery insured were not being

used and operated as an ice factory; that the Faucette Bros. never communicated the fact to his office that these were not being operated as a factory; that he was familiar with the views and customs of insurance companies as to material parts of policies, and that a manufacturing establishment not in operation was not generally considered a good risk.

The witness Meyers also testified that Faucette Bros. had sent reports of all policies issued to G. L. Meyers & Co., general agents, shortly after issuing the same, and had done so as to the policies in suit, setting forth the location and general description, but, upon objection of the appellee's counsel, he was not permitted to state whether there was anything in the report about the plant not being in operation, upon the ground that the written report was the best evidence. We may say, in passing, that we do not think there was any error in this ruling. *Jackson* v. *Son, 2* Caines Rep. 178..

The appellant asked for a peremptory instruction, and also asked the court to instruct the jury that the insurance here was of a manufacturing establishment, and, if it ceased to be operated as a manufactory without consent for more than ten consecutive days, the policy became void; also that the knowledge of Faucette Bros. that the manufacturing establishment had ceased to be operated would not bind the appellant, if at the time they were officially connected with the appellee, or interested in it. These instructions were refused. And, at appellee's request, the court gave a peremptory instruction to the jury, directing them to find in favor of the appellee.

A question is raised in the brief of counsel for appellee as to whether appellant was not bound by the custom of the appellee, while it was operating an ice factory, to shut down during the cold season. But we do not deem it necessary to decide this.

There are two matters we are called upon to determine:

(1) Was the property insured a manufacturing establishment? (2) was the appellant bound by the knowledge of Faucette Bros?

Taking up the propositions in the reverse order to that stated, we first pass upon the question as to whether the Insurance Company was bound by the knowledge of Faucette Bros. As they were largely interested in the Ice & Electric Company,

as directors and stockholders, and one of them was its manager, at the time the policies were issued and until the date of the fire, and it has not been shown that these facts were known to the Insurance Company, or its general agents, at the time the policies were issued, it would be improper to make their knowledge, thus obtained, binding upon the Insurance Company. Where an agent has a personal interest, known to the assured and not known to the insurer, which might induce him to keep a matter concealed from his principal, and he does keep the matter concealed from the principal, to the prejudice of the latter, the assured cannot rely upon the doctrine that the knowledge of the agent of such matter is the knowledge of the principal. Elliott, Insurance, § 164; Mechem, Agency, § 723; *Zimmerman* v. *Dwelling House Ins. Co.,* 72 Miss. 46; *Wildberger* v. *Hartford F. Ins. Co.,* 72 Miss. 338; *Rockford Ins. Co.* v. *Winfield,* 57 Kans. 576; *Spare* v. *Home Mutual Ins. Co.,* 19 Fed. 14; *Cascade F. & M. Ins. Co.* v. *Journal Pub Co.,* 1 Wash. 452; note to *Potter's Appeal,* 7 Am. State, 279-283. And in stating this conclusion we are not oblivious to the fact that sometimes the same person acts as agent of both parties, either where both parties are put on notice of that fact, and acquiesce therein, or some peculiar provision of statute applies. See *Phoenix Ins. Co.* v. *State,* 76 Ark. 180; Clement, Fire Ins. pp. 504, 505; *Clay* v. *Phoenix Ins. Co.,* 97 Ga. 44. And, if this is material in the final determination of this cause, the failure of the court to notice this principle of law would require a reversal of the cause, even though it may be true that the local agents, that is, Faucette Bros., sent a report of the issuance of the policies to the general agents at Memphis, setting forth the location and general description of the property insured. For the appellant was entitled to the judgment of the jury, under proper instruction, on the point as to whether the report contained enough to inform the general agents of the fact that the Ice & Electric Company had ceased to operate an ice manufacturing establishment before the policies had issued.

The remaining question is whether it was incumbent upon the Ice & Electric Company to operate a manufacturing establishment, and not to cease doing so for any period of more than ten consecutive days? It is urged that the words, "if the subject

of insurance be a manufacturing establishment  *  *  *  (and) if it cease to be operated for more than ten consecutive days," were alone sufficient to work a forfeiture in this case.   But we think that if, at the time the policies were issued, there was no factory in operation because the manufacturing of ice had been abandoned, the clause could not operate as a cause of forfeiture, and we must seek further for data on which to base the contention that the appellee was obliged to maintain a manufacturing establishment.   The words quoted are contained in the printed part of the policies, and these printed parts are prepared by the insurer to meet the varying contigencies of different cases of insurance, as they arise; for different forms of policies are not prepared to meet the requirements of each case as it occurs.   The clause might apply appropriately where the application for insurance, if such there was, or where the description of the risk, in apt terms  showed the intention to be to insure a manufacturing establishment in operation, and nothing else.

We are therefore remitted to the written part of the policies.   Now, the language of the first clause, referring to the building, uses the words: "occupied as an ice factory."   Did this require the appellee to operate an ice factory?   The language was capable of meaning that the building had been used and operated as an ice factory at one time, but was not necessarily then so operated.   If it was intended to make the insurance only apply to the building while it was being operated as an ice factory, it would have been easy to say "occupied and operated as an ice factory and only while so operated."   That would have made the language unambiguous.   We are not disposed to construe away the terms of policies, neither are we disposed to give the insurer the benefit of the doubt, where the language is capable of different constructions, since insurance contracts are prepared entirely by the insurer or at its instance, and there is not that mutual consultation as to the use of the terms which obtain in ordinary contracts.   Neither can we shut our eyes to the fact that policies of fire insurance are in most instances taken by the insured without reading, and that they are usually, as in the present instance, filled with provisions bearing upon all manner of subjects  relating to insurance, some of which may not apply to the then existing case; and that the true application

of such provisions is not always clear. We think that the use of the language quoted, especially in view of the apparent indifference of the insurer as to the actual condition and use of the premises until the question of paying the loss arose, indicate that the intention was to insure the property as it was at the date of the policy.

Our conclusions are sustained by the decisions of the Supreme Court of Pennsylvania, in the cases of *Lebanon Mutual Fire Ins. Co.* v. *Erb,* 112 Pa. 149, and *Louch* v. *Orient Ins. Co.,* 176 Pa. 638.

We proceed to examine the cases cited by counsel for appellant. In the case of *Stone* v. *Howard Ins. Co.,* 153 Mass. 475, it was held that at the time the policy issued the property was used and operated as a manufacturing establishment, and was insured as such while it continued in operation, and that afterwards operations were stopped without permission of the insurer. In *Dover Glass Works Company* v. *American Fire Ins. Co.,* 1 Marvel (Del.) 32, the court held that the property insured was a manufactory in operation, and it appeared that during the life of the policy the manufactory ceased to be operated within the meaning of the policy. In *McKenzie* v. *Scottish Union & National Ins. Co.,* 112 Cal. 548, a saw-mill had been shut down, and the policy required certain conditions to be observed under those circumstances by the insured, which it had failed to comply with. In *Brehm Lumber Co.* v. *Svea Ins. Co.,* 36 Wash. 520, the policy insured a saw-mill in operation, and it provided that the mill should not remain idle or shut down for more than thirty days, without permission indorsed thereon, and the insurance company had on one occasion indorsed its permission on the policy, but for the period in question its permission had not been asked nor given. *Cronin* v. *Fire Association of Philadelphia,* 77 N. W. 648, reported again in 82 N. W. 45, was a case in which a creamery, while it continued in operation, had been insured, and operation had ceased for the prohibited period without the permission of the insurance company. In *Day* v. *Mill Owners' Mut. Fire Ins. Co.,* 70 Iowa, 710, the property insured was a flour mill while it was operated, and the mill was shut down for the prohibited period without the permission of the company. In *El Paso Reduction Co.* v. *Hartford Ins. Co.,*

121 Fed. 937, the facts were that at the date of the policy the insured property was being operated as a manufactory, and that it was insured while it should be so operated, and permits had been given to cease to operate the same at certain periods, but not for the period in question. In *Kentucky Vermillion M. & C. Co.* v. *Norwich Union Fire Ins. Co.*, 146 Fed. 695, the written part clearly provided for the continued operation and use of the premises as a manufacturing establishment, the written part setting out particularly what the insured should do in case the plant became idle or was shut down. And these provisions were disregarded. And in *Ranspach* v. *Teutonia Fire Ins. Co.*, 109 Mich. 699, the condition of the policy was that it should become void if the buildings insured "*be* or become vacant, and so remain for ten days," and the premises were left vacant for the prohibited period.

We have reviewed all of the cases which have been called to our attention by counsel for appellant. But we are unable to find anything therein which corresponds with the facts in the present case. All of the cases so cited, except the case last mentioned, went off upon the theory that the facts showed that a mill or manufactory, while continuing to be in operation, was insured, and that there had been a cessation of such operation, without permission or other compliance with the terms of the policy. The Michigan case related to vacancy of the premises, and expressly covered an existing as well as a future vacancy of the premises. But in the case before us we hold that the evidence shows that the property had ceased to be operated or used as a factory long before the policies were issued, and that the language quoted was all the evidence there was to sustain the position that the property insured was to be operated, and only to be insured while being operated, as a factory, and that this was inadequate to establish that contention.

The language of the second clause of the policies, which refers to machinery, engines, and boilers, and says: "and all appurtenances necessary to and used in their business," does not imply that the business of the insured company is that of manufacturing. The courts seem to favor the view, in cases like the present one, that each clause must be construed separately from the other, and that the language of a clause relating to

the building should not be looked to to construe a clause relating to personal property. *Halpin* v. *Ins. Co.,* 120 N. Y. 73; *Phenix Ins. Co.* v. *Holcombe,* 57 Neb. 622, 73 Am. St. 532; Elliott, Insurance, § 251. And see *Sunderlin* v. *Aetna Ins. Co.,* 18 Hun, 522.

It follows that no material error, which calls for a reversal, occurred at the trial in the circuit court, and that the judgment of that court should be affirmed.

And it is so ordered.