# Yost *v.* Anchor Fire Insurance Company, Appellant.

*Insurance—Fire insurance—Policy—Construction of policy—Unoccupied building.*

1. All instruments and agreements are to be construed so as to give effect to the whole, or as large a portion as possible, of the instrument or agreement, and when a court of law is construing an instrument, it is legitimate, if two constructions are fairly possible, to adopt the one which equity would favor. When words admit of two senses, that which gives effect to the design of the parties is preferred to that which destroys it. Words, if of common use, are to be taken at their natural, plain, obvious and ordinary signification, but if technical words are used, they are to be used in a technical sense, unless a contrary intention clearly appears in either case from the context.

2. An insurance company is chargeable with knowledge of the usual and customary methods of conducting the business which it insures.

3. As commonly used and understood, the word "occupation" is synonymous with "possession," but as used in a fire policy, providing that it shall become void if the house insured becomes unoccupied, means that no one lives therein. It is not synonymous with vacant, but is that condition where no one has the actual use or possession of the thing or property in question. In such constructions, the word is to be construed with reference to the nature and character of the building, the purpose for which it is designed, and the uses contemplated by the parties as expressed in the contract.

4. A policy of insurance must be liberally construed in favor of the insured, so as not to defeat, without a plain necessity, his claim to indemnity, which, in making the insurance, it was his object to insure.

5. Conditions providing for forfeitures are to receive, when the intent is doubtful, a strict construction against those for whose benefit they are introduced, and they are enforced only when there is the clearest evidence that that was what was meant by the stipulation of the parties;

there must be no cast of management or trickery to entrap the party into a forfeiture.

6. A policy of fire insurance on what was known as a summer hotel had incorporated in it the following clause: "Permission granted to remain unoccupied during winter months, it being understood, however, that when so unoccupied, a competent person shall be in charge." The hotel accommodated from 300 to 350 people. It was closed on September 1, after which time it was occupied by a competent watchman or caretaker with his family, until a fire destroyed it on September 29. The insurance company claimed that September not being a calendar winter month, the provision, that the policy should be void "if the premises are unoccupied and so remain for ten days," was operative. *Held* (1), that it was for the jury to say under all the circumstances of the case whether the fire occurred during a winter month within the meaning of the policy, and (2) that a verdict and judgment for plaintiff should be sustained.

*Insurance—Fire insurance—Damages—Cash value.*

7. The words in a policy of fire insurance "actual cash value of the property at the date of the fire," do not mean market value, but such value must be ascertained from the evidence and determined by the jury.

Argued Nov. 11, 1908. Appeal, No. 142, Oct. T., 1908, by defendant, from judgment of C. P. Berks Co., Feb. T., 1906, No. 74, on verdict for plaintiff in case of Heber Y. Yost, Trustee, v. The Anchor Fire Insurance Company. Before Rice, P. J., Porter, Henderson, Morrison, Orlady, Head and Beaver, JJ. Affirmed.

Assumpsit on a policy of fire insurance. Before Endlich, J. The facts are stated in the opinion of the Superior Court.

Verdict and judgment for plaintiff for $1,076.86. Defendant appealed.

*Error assigned* among others was in submitting the case to the jury.

*Arthur S. Arnold,* with him *C. H. Ruhl,* for appellant.—The provision that the policy should be void if the premises were unoccupied and so remain for ten days is valid: Hardiman v. Fire Assn. of Phila., 212 Pa. 383; McClure v. Ins. Co., 90 Pa. 277; Moore v. Ins. Co., 199 Pa. 49.

Premises are unoccupied within the contemplation of the policy when they cease to be used for the specific purpose for which they were designated and intended: Hampton v. Hartford Fire Ins. Co., 65 N. J. L. 265 (47 Atl. Repr. 433); Whitney v. Ins. Co., 72 N. Y. 117; Hartshorne v. Ins. Co., 50 N. J. L. 427 (14 Atl. Repr. 615); Halpin v. Ins. Co., 118 N. Y. 165 (23 N. E. Repr. 482); Keith v. Fire Ins. Co., 92 Mass. 228; Ashworth v. Ins. Co., 112 Mass. 422; Limburg v. Fire Ins. Co., 90 Iowa, 709 (57 N. W. Repr. 626); Georgia Home Ins. Co. v. Brady, 41 S. W. Repr. 513.

The wording of the indorsement is an additional indication that in the contemplation of the parties the premises were unoccupied under the conditions existing at the time of the fire.

The provisions of the policy are qualified by the indorsement, and this indorsement is the indorsement of the assured, in the language of the assured, composed by the assured and printed by the assured for the purposes of the assured.

September is not a winter month.

While it is true the word winter has as yet received no judicial interpretation so far as counsel for the defense have been able to ascertain, the other seasons of the year have received such interpretation, and if the judicial interpretations of the other seasons are correct and are recognized by this court they embrace the month of September within such portions of the year, and conclusively exclude that month from the class known as winter months: Abel v. Alexander, 45 Ind. 523; Vanderhoef v. Ins. Co., 46 Hun, 328.

Were there any ambiguity in the language of the assured's indorsement, it must be construed most strongly against the assured and in favor of the insurer: Bole v. Ins. Co., 159 Pa. 53; Burkhard v. Ins. Co., 102 Pa. 262; Merrick v. Ins. Co., 54 Pa. 277; Ins. Co. v. Cropper, 32 Pa. 351.

*Thos. J. Snyder,* of *Snyder & Zieber,* for appellee.—A contract of insurance is like any other contract, and the same cardinal rules of construction apply: Corey v. Edgewood Borough, 18 Pa. Superior Ct. 216; Western & Atlantic Pipe Lines v. Home Ins. Co., 145 Pa. 346; Hey v. Guarantors' Liability Indemnity

Co., 181 Pa. 220; Humphreys v. Benefit Assn., 139 Pa. 264; Hoffman v. Ins. Co., 32 N. Y. 405.

Forfeitures are odious in law, and are enforced only when there is the clearest evidence that that was what was meant by the stipulation of the parties: Helme v. Phila. Life Ins. Co., 61 Pa. 107; Louck v. Ins. Co., 176 Pa. 638; Stafford v. Walker, 12 S. & R. 190.

The question as to damages was properly submitted: Laurent v. Fire Ins. Co., 1 N. Y. Super. Ct. 45; Washington Mills Emery Mfg. Co. v. Weymouth, etc., Mut. Fire Ins. Co., 135 Mass. 503; Waynesboro Mut. Fire Ins. Co. v. Creaton, 98 Pa. 451; Cummins v. Ins. Co., 192 Pa. 359.

OPINION BY ORLADY, J., February 26, 1909:

This action of assumpsit resulted in a verdict in favor of the plaintiff, and represented the amount of the policy in suit. It was one of a number of policies on the same property, which aggregated a total amount of insurance carried on the building and contents of $31,250.

By this policy the sum of $750 was placed on, "A five story frame and stone hotel building, 360x40 feet, including elevators, etc., attached to and a part of the building situated on the summit of the Neversink Mountain, Reading, Pennsylvania; and $250 on Hotel and kitchen furniture," etc. The defendant offered no evidence, and asked the court to enter a nonsuit on the ground that certain provisions in the policy precluded a recovery under the evidence in the case. This the court refused to do, and submitted the case to the jury.

Attached to and made a part of the policy is the following clause: "Permission granted to remain unoccupied during winter months, it being understood, however, that when so unoccupied, a competent person shall be in charge; also for other insurance." The testimony shows that the plaintiff had been the owner of the Neversink hotel property for a number of years; that this policy was countersigned and issued by the agent of the defendant at Reading, Pennsylvania; that the property was known as a summer hotel, containing 219 rooms, and with accommodations for from 300 to 350 people.

The policy was issued July 15, 1905, when the hotel was occupied by guests, and was so used until about September 1, when it was closed for the season, after which time it was occupied by a competent watchman or caretaker, with his family, until the time of the fire on September 29, 1905. The defendant's contention is that September not being a calendar winter month, the provision, that the policy should be void "If the premises are unoccupied and so remain for ten days," is valid, and that the premises were unoccupied within the contemplation of the policy, when they ceased to be used for the specific purpose for which they were designated or intended. Further, that the permission indorsed on the policy is in derogation of the express terms of the policy and is to be strictly construed in restricting the permission in violation of the terms of the policy to the winter months, so as to make the premises unoccupied under the terms of the policy at the time of the fire.

It is not suggested that the loss is not an honest one, and the validity of the verdict depends upon the construction to be put upon the policy, under the evidence, by the court below. All instruments and agreements are to be construed so as to give effect to the whole, or as large a portion as possible, of the instrument or agreement, and when a court of law is construing an instrument, it is legitimate if two constructions are fairly possible to adopt the one which equity would favor: Washington, etc., Railroad Co. v. Ry. & Navigation Co., 160 U. S. 77. When words admit of two senses, that which gives effect to the design of the parties is preferred to that which destroys it: Add. on Contr. 45. Words, if of common use, are to be taken at their natural, plain, obvious and ordinary signification, but if technical words are used, they are to be used in a technical sense, unless a contrary intention clearly appears in either case from the context.

If the condition of the policy was broken, the contract of insurance became void. The provision that it should be void if the premises become vacant or unoccupied, and so remain for ten days, was superseded and modified by the permission granted in the policy that it might remain unoccupied during the winter months, upon the condition that when so unoccu-

pied, "a competent person shall be in charge," and these two clauses must be read and construed together, so as to gather the true intent of the parties. In doing this, we must view the nature of the thing insured, its situation and the circumstances surrounding it; as was said in Corey v. Edgewood Borough, No. 1, 18 Pa. Superior Ct. 216: "The primary rule of construction applicable to a clause in the form of an exception or reservation, is to gather the intention of the parties from the words, by reading not simply a single clause but the entire context, and where the meaning is doubtful by considering such circumstances as are presumed to have been considered." And it must also be presumed that the insurance company was cognizant of the apparent facts and character of the subject-matter of the insurance in regard to which they made the contract, but whether it was or not, it is certainly chargeable with knowledge of the usual and customary methods of conducting the business pertaining to property which it insured: Western and Atlantic Pipe Lines v. Home Insurance Company, 145 Pa. 346. They are presumed to be skilled in the business of insurance, and to know those general facts which are open to the public and may be known to all who are interested to inquire: Hey v. Guarantors' Liability Indemnity Company, 181 Pa. 220. With these standards of interpretation, the defendant company must be presumed to have known the character of the building, the uses to which it was put, the character of its occupation, and the fact that it was used as a summer hotel, was known by the company, is clearly established by the very terms of the policy. There is no provision in regard to the number of guests who are to be in the building, and there is no evidence in the case of its being unoccupied at the time of the fire. The only stipulation is, that when it is unoccupied a competent person shall be in charge. The word "unoccupied" could only refer to the occupation of the hotel by guests or patrons during its season as such hotel and when so unoccupied. "A competent person shall be in charge;" under the admitted facts this was complied with by the occupancy of the caretaker and his family. The word "occupied" has been construed in a number of cases. As commonly used and understood, the word "occupation" is syn-

onymous with "possession," but as used in a fire policy, providing that it shall become void if the house insured becomes unoccupied, means that no one lives therein: Herrman v. Merchants' Insurance Company, 81 N. Y. 184. It is not synonymous with vacant but is that condition, where no one has the actual use or possession of the thing or property in question: Herrman v. Merchants' Insurance Company, 44 N. Y. Super. Ct. 444. In such constructions, the word is to be construed with reference to the nature and character of the building, the purpose for which it is designed, and the uses contemplated by the parties as expressed in the contract. A dwelling house being designed as the abode of mankind, is occupied when human beings habitually reside in it, and unoccupied when no one lives or dwells in it: Hartshorne v. Insurance Company, 50 N. J. Law, 427; Sonneborn v. Insurance Company, 44 N. J. Law, 220; see also 8 Words and Phrases, 7198. In Hardiman v. Fire Association of Philadelphia, 212 Pa. 383, it was held, where a fire insurance policy provides that if the premises be or become vacant or unoccupied and so remain for ten days, the vacation of the premises for such a period will render the policy void, despite the fact that the premises were reoccupied as a dwelling after such time, and, that the forfeiture once determined is operative.

With all the facts presumed to be within the knowledge of both the parties when the policy was written, the closing of the hotel for summer boarders was contemplated by them, and, for the safeguarding of the premises, it was provided in the interests of both the parties, that a competent person should be in charge. In addition to a competent person being in charge of the building, the building itself was in fact occupied by the competent person and his family, and the words "winter months" were reasonably taken as opposed to the months of the season during which the hotel was open for customers. The one season referred in its broadest sense to the time when the hotel was closed to its patrons, and taking the "ten day" clause and the "unoccupied" clause together it is but reasonable to hold that the premium rate was ascertained in the light of the facts within the knowledge of the parties. The object of a

policy of insurance is to provide indemnity to the assured in case of loss, and the policy will be construed in doubtful cases so as to effect that object, rather than to defeat it. It must have a reasonable interpretation, such as was probably in the contemplation of .the parties when it was made. No rule in the interpretation of a policy of insurance is more fully established, or more imperative or controlling, than that which declares in all cases it must be liberally construed in favor of the insured, so as not to defeat, without· a plain necessity, his claim to indemnity which, in making the insurance, it was his object to secure. When the words are, without violence, susceptible of two interpretations, that which will sustain his claim, and cover the loss, must in preference be adopted: Humphreys v. Benefit Association, 139 Pa. 264, and cases therein cited.

Conditions providing for forfeitures are to receive, when the intent is doubtful, a strict construction against those for whose benefit they are introduced, and they are enforced only when there is the clearest evidence that that was what was meant by the stipulation of the parties; there must be no cast of management or trickery to entrap the party into a forfeiture: Helme v. Insurance Company, 61 Pa. 107; Louck v. Insurance Company, 176 Pa. 638. The burden rested on the defendant to show, not merely that the building was unoccupied at the time of the fire, but that it was unoccupied at a time which was contemplated by the qualification, and that a competent watchman was not in charge when so unoccupied. The presumption is that the plaintiff did not violate any of the conditions of the policy, and the burden rests on the defendant to show by evidence a violation of that condition, taking that condition as a whole, with all its stipulations and qualifications.

On the trial the counsel for defendant accepted the term "summer hotel" in the same sense that it was used by the plaintiff, and considered it of importance to have it in evidence. In referring to the purpose of his cross-examination of the plaintiff he stated: "He described this as a summer hotel, and under the terms of the policy it becomes important, and for that reason the term was carefully used to get it in. Having got it in—improperly, I think—I am entitled to cross-examine him

on it as to what constitutes in his judgment a summer hotel," and the court held, "You have a perfect right to find out what he considers a summer hotel."

The word "season" in a contract employing plaintiff to purchase and deliver corn during the coming season will be construed to be used in reference to the period within which it is customary to purchase corn at the place where plaintiff is employed, and it will be presumed that the meaning of the term was well known in such locality: Myers v. Walker, 24 Ill. 133, 134, 136.

The court in construing a contract for the services of an actor during a season, said that it was a question for the jury whether the term "season" was used to designate the customary theatrical season of thirty weeks: McIntosh v. Miner, 53 App. Div. 240 (65 N. Y. Supp. 735, 737).

The defendant presented the following point: The actual cash value of the property at the time any loss or damage occurs is equivalent to and means the market value of the property at the time the loss or damage occurred, which the court below refused. There is ample support to be found for the action of the court in Waynesboro Mutual Fire Insurance Company v. Creaton, 98 Pa. 451, and in Cummins v. Insurance Company, 192 Pa. 359, in which latter case the court below says, "Under the express terms of the contract, the insurers were only liable for the 'actual cash value of the property' at the date of the fire." What was the cash value must be ascertained from the evidence; the price of oak and pine lumber and shingles at the date of the fire was by no means conclusive as to the cash value of the barn, but it was evidence bearing on the question; what weight it was entitled to would depend on the dimensions, quality and kind of timber in the barn as compared with the price of such timber at the time of its destruction. The weight of such testimony could only be properly determined after it was sifted by cross-examination. Nevertheless, it was evidence, whether of great or little weight, for the consideration of the jury, and the court committed no error in admitting it.

The assignments of error are overruled, and the judgment is affirmed.