## Stewart v. Automobile Underwriters Company, Inc.

*Lisle A. Zehner*, for plaintiff.
*T. J. Reinstadtler*, for defendant.

SILVESTRI, J., April 27, 1971.—In this action based on a contract of insurance, the following facts have either been stipulated to by counsel for plaintiffs and defendant or appear in the record. In addition, it has been stipulated and agreed by counsel for the parties that in the event that a verdict is rendered in favor of plaintiffs, the amount recoverable in the portion of the verdict allocated to the personal injury claim of Clare T. Stewart should be in the total amount of $12,400, including interest and that in the property damage verdict of Walter Stewart the award should be in the total amount of $1,616.30, also including interest.

On May 1, 1957, plaintiff, Clare T. Stewart, was injured when the automobile she was driving was struck by an automobile operated by John Pobicki, a minor. At the moment of the accident, Pobicki was traveling at a speed in excess of 70 miles per hour and was proceeding on the wrong side of the highway. The vehicle he was driving was stolen. Pobicki fled the scene of the accident and was later apprehended by the Pennsylvania State Police some distance from the collision.

As a result of the accident, plaintiffs herein filed an action in trespass against John Pobicki and his mother, Catherine Pobicki. The case was heard before a jury and a verdict was returned in favor of plaintiffs against both John Pobicki and Catherine Pobicki. Judgment non obstante verdicto was entered in favor of Catherine Pobicki, leaving the verdict against John Pobicki only.

The basis for the action in the instant case grows out of an automobile liability insurance policy in which Catherine Pobicki was the named insured and which was in full force and effect on the day of the accident. The policy provided, in pertinent parts, two of which are set out below, coverage for liability in-

curred by the insured for bodily injuries resulting from the use of an automobile owned by the insured, and coverage for liability resulting from the use of automobiles not owned by the insured and a definition of those who are to be included within the term "assured." The insurer has denied that it is responsible under its policy of insurance with Catherine Pobicki for the liability incurred by John Pobicki to the plaintiffs herein in the May 1, 1957, accident.

Paragraph VII.

"USE OF OTHER AUTOMOBILES.

"If the named assured is an individual who owns the automobile described in the policy or if such automobile is owned jointly by two or more related residents of the same household, such insurance as is afforded by this policy under coverages A, B, C, Section 1, D, E, F, G, and H with respect to said automobile applies with respect to any other automobile subject to the following provisions:

"(a) With respect to coverages A and B the unqualified word *"assured"* includes

"(1) The named assured and spouse or any *relative* of either *if a resident of the same household* while either is using any other automobile; . . ." (Italics supplied.)

Paragraph XII

"DEFINITION OF 'ASSURED' "

"(A) The *unqualified word 'assured'* wherever used with respect to the insurance for bodily injury liability and property damage liability includes the named insured and, if the named insured is an individual, his spouse if a resident of the same household, it also *includes any person while using the automobile* and any person or organization legally responsible for the use thereof, *provided the actual use* of the automobile *is* by the named assured or spouse or with the permission of either . . ." (Italics supplied.)

One of the major issues in this case is the determination of whether John Pobicki was at the time of the accident a "resident of the same household" as the named insured, his mother, Catherine Pobicki. (The insurer concedes that John Pobicki is a relative within the definition of that term in defendant's policy.) Since defendant contends John Pobicki was not a resident within the meaning of the policy, it is necessary to trace certain events in the life of John Pobicki prior to the day of the accident and those occurring immediately after the accident, events which have also been stipulated to by counsel for the parties.

According to the stipulation, John Pobicki had been involved with the law as a juvenile for several years prior to the accident. In 1954 he was arrested on a burglary charge and was sentenced to an indefinite term at Thorn Hill School where, after a brief period of detention, he was released on probation. He violated the provisions of his probation and was sent by order of the Juvenile Court of Allegheny County to the Philadelphia Protectory for Boys where he remained for approximately 13 months. Upon his release from the Philadelphia Protectory, he was placed in the custody of his mother and returned to her residence. In March 1957, Pobicki was again arrested while riding as a passenger in an automobile that had been reported as stolen. He was returned to the control of the Juvenile Court of Allegheny County by the arresting authorities and a hearing was scheduled on charges concerning the stolen car and the resulting parole violations. Just two weeks prior to the accident, his mother obtained his release from the Juvenile Court and returned with him to her residence where he reentered Tarentum High School.

On the morning of the accident, John Pobicki had breakfast at his home, boarded a school bus and rode it to Tarentum High School. However, once at the high

school instead of going to clases he left the school premises, found an automobile with keys in it, took it and was driving it when he became involved in the accident with plaintiffs.

Following the accident, John Pobicki was detained for approximately 22 months at the Camp Hill Reformatory where after 18 months he made the statement to a representative of defendant that it was his intention on May 1, 1957, to run away from his mother's home although he had never before communicated that intention to anyone nor did he have any funds or clothing with him at the time. Upon his release from the Camp Hill Reformatory, he returned to his mother's residence.

Defendant has conceded that John Pobicki has resided at his mother's residence except for periods of detention at various detention homes for a period of approximately 16 years prior to May 1, 1957. Therefore, the only question regarding residence is whether John Pobicki was a resident in the home of his mother, Catherine Pobicki, the insured, within the terms of the policy at the time of the accident.

Plaintiffs cite to us many cases as to the meaning of the word "resident" in the context of this policy, including the principle that a minor's domicile is normally the same as that of his parents. It is, however, our opinion that a related resident in the context of this policy has only two qualifications: (1) That the relative actually be living in the same household, and (2) that he has the intent that it be his permanent household: Yost v. Anchor Fire Insurance Co., 38 Pa. Superior Ct. 594 (1909). Words of common usage in a policy of insurance will be construed in the natural, plain and ordinary sense and only technical words are to be construed in their technical sense unless a contrary intention clearly appears.

In support of its contention that John Pobicki was not a resident in his mother's household, defendant offers only the statement of John Pobicki, one and one-half years after the accident, that it was his intention to run away from home. The overwhelming weight of the evidence is that this was not his manifested intention, that, in fact, the only demonstrable intention he had was stealing the car. He did not manifest or declare his intention to run away from home to any of his friends or acquaintances, he made no preparations to leave home, he had no money or clothing and he had no place to go, outside of the only home he had ever known other than various detention homes. The controlling principle of law is that a' man's declarations made subsequent to an act for which intention is to be proved are admissible and probative of the original intention with which it was done only when they are corroborated by other evidence of intent existing at the time in question: Smith v. Smith, 364 Pa. 1 (1950). In order to prove intent, the better inferences are those which can be drawn from an observed effect, e.g., conduct, to the probable cause, a specific mental state, and not from effect to cause. In this case, there is no evidence of the existence of any plan or design on the part of John Pobicki to run away at the time of the accident which might evidence his intent to do so. The only logical inferences that we can draw from his conduct, i.e., his stealing a car, in view of his past history is that it is consistent with his delinquent behavior, as to his fleeing the scene, is his consciousness of guilt stemming from his theft of the car.

There are two remaining issues in this case involving the interpretation of the language of this policy in light of the foregoing facts.

The insurer first contends that the language of the

policy was intended to give coverage only where the operation of the automibile is with the owner's consent and not where the automobile has been stolen or taken without the consent of the owner.

As noted above, paragraph VII of the policy provides protection for the "assured" growing out of the use of an automobile not owned by the insured but being used by him at the time when the liability attaches. At the same time, subsections of this paragraph place limitations on the coverage with respect to the use of non-owned automobiles. For example, in subsection 3 certain use situations by relatives of the named insured are specifically excluded, they extend to situations where any automobile is hired as a part of the frequent use of a hired automobile by such relative; where an automobile is used in the business or occupation of such relative or where the relative is the owner or co-owner of any automobile other than the one described in the policy. None of these exclusions are applicable to the instant case nor are any of the other exclusions contained in that paragraph.

Defendants predicate their opposition on paragraph XII of the policy and the definition of assured contained therein. That paragraph, while providing a general statement as to the meaning of "assured" within the policy, adds the qualification that persons other than the named insured or his spouse must have the consent or permission of the named insured or such spouse in order to qualify as "assured" with respect to the insurance for bodily injury and property damage coverage. The effect of the provision is to afford coverage as an additional insured operating the vehicle with the permission of the owner. Defendant urges us to construe this as affording coverage to a relative resident of the household only when the relative has the consent of the assured to operate the nonowned automobile.

We necessarily reject this interpretation. The "automobile" referred to in the definition of assured can only mean the automobile owned by the named insured as it is only with regard to such automobiles that the named insured has the power to give the consent for its use. To extend the requirement to automobiles not owned by the named insured or to "any other automobile" in paragraph VII would render the whole condition a nullity.

". . . it will never be presumed that persons occupying a contractual relation intend that an impossible thing shall be done": Bingell v. Royal Ins. Co. Ltd., 240 Pa. 412, 417 (1913).

In addition, paragraph VII provides its own definition of assured in section (a) as to other sections of the policy. Paragraph XII defines the word assured only as a general reference and it does not preclude the redefinition of the word.

There is no language in paragraph XII which incorporates the provision for "permission of the assured" to operate the assured's automobile into paragraph VII as requiring the permission of the assured to operate a nonowned automobile or the permission of the owner of the nonowned automobile. For this court to place such a meaning on the clear wording of the policy would be a torturous construction and a rewriting of the policy, which we cannot do.

Paragraph VII means exactly what it says; "any other automobile" includes automobiles whether they are stolen, borrowed or being used under a mistake of fact. Defendant's argument that the policy was never intended to cover a relative who negligently caused injury with a stolen car and had it been aware that the terms of the policy covered such a situation, it would have provided against it, is untenable. The purpose of the policy of automobile liability is to cover every possible risk contingency which the in-

sured may incur. As outlined above, the policy went into extensive detail on exclusions covering use by relatives. It is difficult for this court to imagine that in the preparation of this document the drafters overlooked the possibility of the use of a stolen automobile. Rather, it is our opinion that the language "any other automobile" was meant to extend the broadest of coverage, including stolen cars. In any event, this court is not about to narrow the coverage afforded in such a policy by reading into it an exclusion that the drafters could have quite easily provided for or which further limits a coverage already reduced to a minimum. The insurer has complete control over what is included and what is to be excluded from coverage; the insured may purchase the policy only on a take it or leave it basis and he has no say whatsoever in the language, assuming he had the technical ability to do so. In this regard is the general principle of construction that an insurance policy will be construed most strongly against the insurer who prepared it: Blue Anchor Overall Co. v. Pennsylvania Lumbermens Mutual Insurance Company, 385 Pa. 394 (1956), and a statement approved by a similar New York court cited to us by plaintiff:

"If an exclusion of liability is intended which is not apparent from the language employed it is the insurer's responsibility to make such intention clearly known (Morgan v. Greater New York Taxpayers Mut. Ins. Assn., 305 N.Y. 243, 1 2 N.E. 2d 273, 275. . . .)": Sperling v. Great American Indemnity Company, 7 N.Y. 2d 442; 166 N.E. 2d 482, 485 (1960).

Defendant argues that this interpretation would be against public policy since the damage occurred as a result of acts performed by the insured in the course of the commission of a crime. This is clearly not the case

and it has been so decided in several jurisdictions including Pennsylvania, Eisenman v. Hornberger, et al., 438 Pa. 46 (1970); Sperling v. Great American Indemnity Company, supra; Blackwell v. National Fire Insurance Co. of Hartford, 234 N.C. 559 (1951).

In the Eisenman case, supra, while the court did not deal directly with the question of automobile liability insurance, the facts are sufficiently similar to be controlling in this case. In Eisenman, the Supreme Court of Pennsylvania held that property damage was compensable under a policy of insurance even though it occurred as a result of acts performed by the insured while he was burglarizing plaintiff's home. The action was brought under a provision of the policy in which the company agreed "to pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of . . . property damage." In making its decision, the court considered these questions: (1) Was there any evidence that the policy was procured in contemplation of the crime; (2) does the policy in any way promote the unlawful act; (3) would denying coverage serve as a deterrent, and (4) does the policy save the insured from the consequences of his unlawful act.

Applying these same questions to the case at bar, we cannot see any possible manner in which our interpretation would offend public policy any more than we can see how automobile liability insurance generally is against public policy. The benefit is not to the criminal John Pobicki but to his "victims." In any case, the injury here is a result of a negligent act, the manner in which John Pobicki obtained the car has little, if anything, to do with his liability for the negligent operation of the car. The insurer is only being asked to indemnify against the consequences of

his negligence, not against the criminal consequences stemming from that theft: Sperling v. Great American Indemnity Company, supra.

Accordingly, we find in favor of plaintiffs in the amounts stipulated to by counsel.