## Blue Anchor Overall Co. *v.* Pennsylvania Lumbermens Mutual Insurance Company, Appellant.

Argued May 1, 1956. Before STERN, C. J., JONES, BELL, CHIDSEY, MUSMANNO and ARNOLD, JJ.

*Joseph Head, Jr.,* with him *Swartz, Campbell & Henry,* for appellant.

*Burton Caine,* with him *Nathan Silberstein* and *Wolf, Block, Schorr & Solis-Cohen,* for appellee.

OPINION BY MR. JUSTICE CHIDSEY, June 25, 1956:

This is an appeal from a final judgment dismissing defendant's exceptions to the finding for plaintiff of the trial judge sitting without a jury and entering judgment for the plaintiff.

Plaintiff, a manufacturer of men's work and sport clothing, brought this action in assumpsit seeking recovery in the sum of $3,983.86 under an insurance policy issued by the defendant for damage to its merchandise resulting from leakage from fire protective equipment. At the time of the loss, plaintiff was insured by the defendant under an 80% "reporting form" policy against loss by fire, which policy also carried standard Extended Coverage Endorsement No. 3, affording protection against loss from leakage from fire protective equipment. The defendant admits that its policy contract covered the risk causing the loss; the amount of plaintiff's damage is also undisputed. At the same time plaintiff was also insured by two fire insurance policies of another company against loss to the same subject matter, one a "specific" policy for $75,000, and the other a 20% "reporting form" policy. Neither of these policies covered the risk of leakage from fire protective equipment.

Defendant first contends that by virtue of the apportionment clause in the extended coverage endorsement No. 3 of its policy, the insurer's liability is limited to $1466.54 which is the proportion of the loss that the amount of its policy bears to the total amount of fire insurance carried by the plaintiff. The clause in question provides as follows: "In the event that the Insured carries other insurance whether concurrent or not, and whether collectible or not, covering in whole or in part the interest(s) in the property involved in the loss covered by this policy, this Company SHALL NOT BE LIABLE under this Endorsement for a greater

proportion of any loss than . . . (2) the amount of this policy bears to the total amount of fire insurance; (3) the amount insured under this Endorsement applying to the peril causing the loss bears to the total amount of insurance against such peril under all fire insurance policies; . . .". Defendant's position is that plaintiff's two other fire insurance policies constitute "other insurance" within the meaning of the above quoted clause, even though the loss was not due to fire but was due to sprinkler leakage which was insured against only in the policy issued by defendant company; and that its liability is limited, in accordance with sub-clause 2 quoted above, to the proportion of the loss which the amount of its policy bears to the total amount of fire insurance carried by plaintiff.

It is well established that an insurance policy will be construed most strongly against the insurer who has prepared it: *MacDonald v. Metropolitan Life Insurance Co.*, 304 Pa. 213, 155 A. 491; *West v. MacMillan (and Automobile Underwriters Insurance Co., Garnishees)*, 301 Pa. 344, 152 A. 104. If there is any doubt or ambiguity as to the meaning of the policy, the doubts or ambiguities will be resolved in favor of the insured: *Beley v. Pennsylvania Mutual Life Insurance Co.*, 373 Pa. 231, 95 A. 2d 202; *Howley v. Scranton Life Insurance Co.*, 357 Pa. 243, 53 A. 2d 613. It is also well settled that if an insurance policy is reasonably susceptible of two interpretations it is to be construed in favor of the insured in order not to defeat, without plain necessity, the claim to indemnity which it was the insured's object to obtain: *Armon v. Aetna Casualty and Surety Company*, 369 Pa. 465, 87 A. 2d 302, and the many cases cited therein. Words of common usage in a policy of insurance will be construed in their natural, plain, and ordinary sense, but

if technical words are used, they will be construed in their technical sense unless a contrary intention clearly appears: Goldin, The Law of Insurance in Pennsylvania, Vol. I, Sec. 237 (2nd ed. 1946); *Yost v. Anchor Fire Insurance Company*, 38 Pa. Superior Ct. 594.

With these principles of construction in mind, we turn to an analysis of the clause in question. It begins: "In the event that the Insured carries other insurance whether concurrent or not, . . . this Company SHALL NOT BE LIABLE. . .". It is at once apparent, and appellant admits, that before the apportionment clause can become operative it must appear that the insured did in fact carry "other insurance". In other words, unless the two other fire insurance policies carried by the plaintiff constitute "other insurance" within the meaning of the apportionment clause, the clause does not apply. The authorities are legion [1] that other or double insurance exists only where there are two or more insurance policies covering the same interest, the same subject matter and against the same risk. Since defendant's insurance policy is the only one which protects against the risk of loss due to leakage from fire protective equipment, it would seem clear that plaintiff's other fire insurance policies, being for a different risk, would not constitute other insurance.

Appellant ably presents the ingenious argument that the specific words of the apportionment clause expressly require such other insurance to be identical

---

[1] *Sloat v. The Royal Insurance Company*, 49 Pa. 14; *Lebanon Mutual Insurance Company v. Kepler*, 106 Pa. 28; *C. J. Clarke et al. v. Western Assurance Co.*, 146 Pa. 561; *Edwards v. Commonwealth Mut. Fire Ins. Co. of Pennsylvania*, 197 F. 2d 62 (C.A. 3); *P. W. Ziegler Company v. Commercial Union Assurance Company*, 38 Pa. Superior Ct. 532; *Hoenigman v. Continental Insurance Company*, 85 Pa. Superior Ct. 24; Richards On Insurance, Sec. 513 (5th ed. 1952); 5 Couch, Insurance §1039.

only with respect to the elements of interest (such as owner, bailee, lessee, etc.) and subject matter, and that therefore the phrase "whether concurrent or not" was intended to mean that the other insurance need not cover the same risks. We are brought therefore to the question: What is meant by the words "concurrent or not"?

The word "concurrent", while its primary dictionary meaning is "running together" (The Oxford English Dictionary, Vol. II) is used in different senses. There is authority for the proposition that in insurance policies it has no settled, definite, technical meaning: *Globe & R. F. Ins. Co. v. Alaska-Portland Packers' Ass'n.*, 205 Fed. 32 (C. A. 9); 5 Couch, Insurance, §1039. It could be construed to mean that other insurance policies *covering the same risks* as defendant's policy would prorate even though not coextensive in time. The words may also refer to other policies insuring *against the same risks* but covering the insured's property only in part, or containing different and inconsistent provisions applicable to the one loss. "The presence of such circumstances is termed in the trade 'nonconcurrencies' ": Richards, Law of Insurance, supra, Sec. 540. Difficult problems of apportioning the loss between the different insurance carriers are presented in such situations. For example, suppose there is a fire loss on one item alone, which is covered by both specific and blanket fire insurance policies. The question arises as to whether the full amount of the blanket policy prorates with the specific policy to pay the loss. Or suppose there is a fire loss on two items, and the blanket policy covers both items while the specific policy covers only one. How is the loss to be apportioned between the two policies? Although different courts have applied various solutions to the above described problems, in Pennsylvania the

rule is clear that where there are specific and blanket policies covering the damaged property, the specific policies must pay in full, and if they are not sufficient to cover the loss, the blanket policies pay the difference up to the amount of the policies: *Meigs v. Insurance Company of North America*, 205 Pa. 378, 54 A. 1053. The above described situations are instances where the different policies are said to have "simple nonconcurrence": Goldin, The Law of Insurance in Pennsylvania, supra, Sec. 447; Richards, Law of Insurance, supra, Sec. 542. Nonconcurrent is therefore used to describe insurance policies all of which protect the insured against the same risk, some policies covering the specific property destroyed and other specific property, and some being blanket policies. Nonconcurrency thus does not necessarily refer to policies covering different risks. At best the words "concurrent or not" are certainly ambiguous, and in the light of the well established rule that all doubts or ambiguities as to the meaning of an insurance policy will be resolved in favor of the insured so as to give him the benefit of the indemnity for which he has bargained, we cannot accept defendant's suggested construction of this provision.

Defendant next contends that plaintiff erroneously reported to the insurance company that it had specific insurance in the amount of $75,000 and that therefore under Clause 10 of the Reporting Form Endorsement to the policy, plaintiff cannot recover its full loss. Clause 10 provides: "Liability under this policy shall not in any case exceed that proportion of any loss hereunder (meaning the loss at the location involved after deducting the liability of specific insurance, if any), which the last reported value filed prior to the loss, less the amount of specific insurance reported, if any, at the location where any loss occurs bears to the

actual value less the amount of specific insurance, if any, at that location on the date for which report is made. . . .". Defendant relies on the case of *Peters v. Great American Insurance Co., New York,* 177 F. 2d 773 (C. A. 4), which held, in interpreting this standard clause, that the liability of the insurer is limited to that proportion of the loss which the last reported value, less the amount of specific insurance last reported, bears to the actual value less the amount of specific insurance in effect at the time of the report.

Defendant maintains that approximately two months prior to the loss plaintiff filed a written report with the insurance company in which it reported "specific" insurance in the amount of $75,000 covering the property involved herein, and that in accordance with Clause 10 quoted above, this report of specific insurance carried should be considered in determining the liability of the insurer. At the trial defendant introduced into evidence a document entitled "Monthly Report of Actual Cash Values", purportedly signed by a Mr. Rosenbaum, an officer of plaintiff company. This report on its face showed the value of plaintiff's merchandise for certain months at the various locations covered by the policy and also carried a notation opposite the location here in question as follows: "spec. 75,000". However, Mr. Rosenbaum testified that he did not sign the report and there was no evidence that any of plaintiff's officers or employes had attached his signature. Although the trial judge made no finding of fact on this point, but only found generally for the plaintiff in the amount claimed,[2] this finding has the

---

[2] Trial of civil actions in the Courts of Common Pleas of Philadelphia County, by a judge without a jury, is authorized by the Act of June 25, 1937, P. L. 2090, 12 PS §695 which provides: ". . . If both parties, as aforesaid, have filed agreements that the case may

force and effect of a verdict of a jury and in support of the judgment entered by the court below, the plaintiff is entitled to the benefit of the most favorable inferences from the evidence: *Fisher v. Congregation B'nai Yitzhok,* 177 Pa. Superior Ct. 359, 110 A. 2d 881; *Jann v. Linton's Lunch,* 150 Pa. Superior Ct. 653, 29 A. 2d 219. Accordingly, the conflicting evidence on this disputed question of fact must be resolved in favor of the plaintiff. Defendant, having failed to prove that the report in question was prepared by or under the direction of plaintiff, cannot use the report to limit its liability.

Defendant also suggests in its brief that the court below erred in refusing to allow it to admit into evidence a complaint brought by this same plaintiff against an insurance broker for failing to provide the coverage which is contended for in this action. This point, not being presented in appellant's statement of questions involved, ordinarily will not be considered: Rule 35, Rules of the Supreme Court of Pennsylvania; *Burke Appeal,* 378 Pa. 616, 108 A. 2d 58. But aside from this, no error was committed since defendant's liability is primarily a question of law depending upon the interpretation of its insurance policy.

Judgment affirmed.

---

be tried by a judge without a jury, it shall be so tried under such rules of procedure as the said several courts of common pleas shall prescribe.". Under the rules of the Court of Common Pleas of Philadelphia, the trial judge is not required to assign reasons, "the adjudication of the trial judge may consist only of his decision of the case . . .": Rule 270(b) of The Philadelphia Common Pleas Courts Rules.