## Caterbone v. Lititz Mutual Insurance Co.

*Frank E. Roda*, for plaintiff.

*Barley, Snyder, Cooper & Mueller*, for defendant.

JOHNSTONE, J., January 30, 1959.—In this action in assumpsit plaintiff seeks to recover from the three defendant insurance companies the sum of $310.69 under a fire and extended coverage insurance policy issued by defendants to plaintiff. The complaint avers that defendants issued their insurance policy to plaintiff on February 12, 1957, for a term of five years, and that plaintiff paid the required premium thereon. It is further averred that on February 17, 1958, a windstorm blew open a window which permitted cold air to enter the insured's premises and to freeze the steam pipes used in the operation of plaintiff's dry-cleaning business. As a result of the windstorm and the resulting freeze plaintiff suffered a loss in the sum of $310.69, for which a proof of loss was furnished to defendants.

Preliminary objections have been filed by defendants and these objections have been argued before the court en banc. The preliminary objections are in the form of a demurrer to the complaint and state that no cause of action has been averred since the insurance policy issued to plaintiff does not cover the loss which is the basis of the claim. In the alternative, the preliminary objections ask for a more specific complaint because the complaint does not aver how the damages occurred and what was their nature and extent.

The interpretation and meaning of an insurance contract is presented here and the court will endeavor to determine the intention of the parties from the entire contract and each and every part of it will be taken into consideration and given effect if that is possible: Cerceo v. DeMarco, 391 Pa. 157. Contracts of insurance should be construed so as to carry out the true intentions of the parties: Sack v. Glens Falls Insurance Company, 356 Pa. 487, 490. It is a well established legal principle that insurance policies will be construed most strongly against the insurer since it was the insurer who prepared the contract and if there is any doubt or ambiguity as to the meaning of the policy, such doubts or ambiguities will be resolved in favor of the insured: Blue Anchor Overall Co. v. Pennsylvania Lumbermens Mutual Insurance Company, 385 Pa. 394, 397. It is equally well settled that where a policy is susceptible of more than one construction, it must be liberally construed in favor of the insured and against the insurer. However, where there is no ambiguity the court must construe the language in accordance with the plain ordinary meaning of its terms: Allen v. Insurance Company of North America, 175 Pa. Superior Ct. 281, 284. It is only in case of doubt that the language of an insurance policy is to be interpreted so as not to deprive the insured of the in-

demnity provided for under its terms: Topkis v. Rosenzweig, 333 Pa. 529, 531.

In the present case defendants say that they did not insure plaintiff against the loss which he has sustained and point to a provision in the policy to support their position. In the extended coverage endorsement, the policy states: "Provisions, Applicable Only to Windstorm and Hail: This Company shall not be liable for loss caused directly or indirectly by (a) frost or cold weather or (b) ice (other than hail), snowstorm, sleet, waves, tidal wave, high water or overflow, whether driven by wind or not." Plaintiff argues that this provision in the contract applies only to external damage to the building and not to damage caused to the interior. He bases his argument on the fact that the paragraph immediately following the above quoted paragraph applies to loss to the interior of the building. However the policy makes no distinction between exterior and interior loss and there is nothing in the paragraph quoted above which limits the exclusion of liability to the exterior of the building. The language is clear and the intention is apparent to exclude from coverage under the policy any direct or indirect loss caused by frost, cold weather, ice, snowstorm, etc. We have no doubt that this exclusion applied as well to the interior as to the exterior of the building since no limitation of any kind is placed on the exclusion of coverage.

The averment in plaintiff's complaint is that the wind blew open one of the windows in plaintiff's building and permitted the cold air to enter and freeze the pipes. The policy has this to say about loss to the interior of the building: "This Company shall not be liable for loss to the interior of the building or the property covered therein caused, (a) by water, rain, snow, sand or dust, whether driven by wind or not, unless the building covered or containing the property

covered shall first sustain an actual damage to roof or walls by the direct force of wind or hail and then shall be liable for loss to the interior of the building or the property covered therein as may be caused by water, rain, snow, sand or dust entering the building through openings in the roof or walls made by direct action of wind or hail." It should be noted that the interior of the building is *only* protected for loss caused by water, rain, snow, sand or dust. There is not mention made of any coverage for damage which may result from freezing air entering the building through an opening caused by wind. The contract specifically lists the causes for damage which are covered and the claim of plaintiff is based on a cause which is not included in the policy. Since plaintiff is not covered against the loss upon which he bases his claim, he has no right to recover from defendants for his loss. We do not consider that the language used is in any way doubtful or ambiguous and we are bound to interpret the policy as it is written and not read into it doubt or ambiguity where none exists. Plaintiff would have us declare that any unnatural condition brought about by the forces of nature could be considered to be covered by the policy. However, the extent of coverage was determined by the parties when they entered into the contract of insurance and we cannot rewrite the policy or write anything into it which the parties themselves did not intend: Mullen v. John Hancock Mutual Life Insurance Company, 150 Pa. Superior Ct. 323.

Our conclusion is that the policy of insurance issued by defendants to plaintiff specifically excludes from its coverage the damage suffered by plaintiff in the freezing of the steam pipes in his plant. If the sustaining of preliminary objections results in a denial of plaintiff's claim or in a dismissal of his suit, the preliminary objections should only be sustained in cases which are clear and free from doubt: Fawcett v. Monongahela

Railway Company, 391 Pa. 134. The sustaining of defendants' first and second preliminary objections in this case will result in a denial of plaintiff's claim and a dismissal of his suit, but this is a clear case where plaintiff has not stated a cause of action and we can think of no way in which plaintiff could amend his complaint so as to bring his loss within the coverage of defendants' insurance policy. Since the sustaining of the first and second preliminary objections will have the effect of dismissing plaintiff's complaint, no good would be accomplished by a consideration of the third preliminary objection which asks for a more specific complaint.

And now, January 30, 1959, the first and second preliminary objections in the nature of a demurrer filed by defendants to plaintiff's complaint are sustained and the complaint is dismissed.