## Mecchia v. Lebanon Mutual Insurance Company

*Louis M. Tarasi, Jr.,* for plaintiffs.
*Arthur Bloom,* for defendant.

ROWLEY, *J.,* August 29, 1975—This opinion is filed pursuant to Superior Court Rule No. 46 to set forth the Court's reasons for its per curiam order dated March 19, 1975, denying the defendant insurance company's motion for a new trial following a jury verdict in favor of plaintiffs, Robert D. Mecchia and Janet C. Mecchia (Mecchias), for damage to a dwelling which was totally destroyed by fire. Defendant, Lebanon Mutual Insurance Company (Lebanon), has raised two questions before the court en banc and in its appeal to the Superior Court. Those questions are: (1) Is Lebanon entitled to prorate plaintiffs' damages by virtue of a fire insurance policy issued by another carrier on the same premises to Mecchias' sellers, and (2) are plaintiffs entitled to recover damages on a "replacement cost" basis or an "actual cash value" basis. The court en banc concluded, as did the trial judge, that defendant was *not* entitled to prorate plaintiffs' damages and that plaintiffs were entitled to the replacement cost of the insured dwelling, rather than its actual cash value. It is from these rulings that defendant has appealed.[1]

---

1. Four days after the jury's verdict was returned, plaintiffs entered judgment on the verdict. Subsequently, defendant filed its motion for a new trial and also a motion to strike the judgment entered by plaintiffs on the verdict. The court en banc, before proceeding to the merits of defendant's motion for a new trial, entered an order striking the judgment which had previously been entered on the verdict. No appeal has been taken by plaintiffs from the court's order striking the earlier judgment.

On March 8, 1972, the Mecchias entered into a written contract to purchase from Dow I. Miller and Betty Miller (Millers)[2] the residential property at 208 Fernwood Drive, Economy Borough, in Beaver County, for a price of $19,900. The contract provided that:

"Any loss or damage to the property caused by fire . . . between the date of this agreement and the time of settlement, shall not in any way, void or impair any of the conditions or obligations hereof unless the required mortgaging or financing, as specified herein, cannot be attained because of such loss or damage. Seller shall maintain existing fire and extended coverage or homeowners' type insurance policies, if any, until the time of final settlement. Buyer is hereby notified that it is his responsibility to insure *his interest* in the said premises at *his own cost and expense.*" (Emphasis supplied.)

On March 11, 1972, defendant, Lebanon, issued a three-year homeowner's policy to the Mecchias. The policy included fire insurance coverage on the home which the Mecchias were purchasing from the Millers. The premium was paid by the Mecchias. On March 16, 1972, prior to settlement, a fire occurred which totally destroyed the dwelling house. Although the premium had been paid and the policy issued, the Mecchias did not receive their policy until sometime subsequent to the fire.

---

2. Prior to trial, plaintiffs' sellers, Dow I. Miller and Betty Miller, his wife, were permitted to intervene as plaintiffs in this case. During the trial a compulsory nonsuit was entered in favor of defendant and against the Millers. After the verdict was returned, the Millers filed a motion to remove the compulsory nonsuit. However, that motion was withdrawn by letter of their counsel dated December 10, 1974.

A dispute developed between the Mecchias and Lebanon concerning the amount which the Mecchias were entitled to be paid under the fire insurance coverage contained in the homeowner's policy issued by Lebanon. Eventually, on February 15, 1973, plaintiffs filed this action in assumpsit against Lebanon to recover the damages which they claimed they were entitled to under the policy. Following a trial before the court and a jury, the jury returned a verdict which included the full limit of Lebanon's liability for fire loss on the dwelling. As indicated, Lebanon's post trial motion for a new trial was denied by the court en banc, and an appeal was taken to the Superior Court.

## PRORATION

At the trial, Lebanon offered to prove that the Millers carried fire insurance on the dwelling with another carrier. That policy was in the Millers' name alone. The offer was also to show that the Millers had filed a claim and received payment from their carrier in the amount of approximately $8,000. This offer was objected to by plaintiffs, and the objection was sustained by the trial court. Lebanon's claim that it is entitled to prorate the loss with Millers' carrier is based upon a provision in the Mecchias' policy which provides:

"This Company shall not be liable for a greater proportion of any loss than the amount hereby insured shall bear to the *whole insurance* covering the property against the peril involved, whether collectable or not." (Emphasis supplied.)

We approach this question with certain well-settled legal principles in mind. These are, that policies of insurance are to be construed liberally in favor of the insured and most strongly against

the insurer who prepared the policy. If any doubts or ambiguities arise as to the meaning of any of the policy provisions, that doubt must be resolved in favor of the insured. This principle requires that when the provisions are reasonably susceptible of two different interpretations, one of which favors the insurer and one the insured, the latter is the one that must be adopted. We are of the opinion that the proration clause quoted above is reasonably susceptible of two different interpretations. One is the interpretation contended for by defendant Lebanon. That contention is that the term "whole insurance" refers to all of the insurance on the property regardless of the identity of the insured carrying it. However, we are of the opinion that the clause is susceptible of an equally reasonable interpretation that the term"whole insurance" refers to the total amount of insurance carried by the insureds, the Mecchias, on the property. Had Lebanon intended that the clause should mean what it now contends for, it would have been a simple and effortless matter to state that clearly. However, their failure to do so means that the uncertainty must be resolved in favor of plaintiff's contention.

Nor is this conclusion without authority. In 16 Couch On Insurance 2d §62.94, the author points out that the term "other insurance," which may be equated with the term "whole insurance," means or refers to "other insurance" on the "same interest." In the case before us the insurance on which Lebanon relies to justify a proration is *not* insurance on the "same interest." The same author at §62:100, p. 538, says: "The policy covering the interest of a vendee under a purchase contract has no application to the insurance issued on the ven-

dor's separate and distinct insurable interest." Also see Blue Anchor Overall Co. v. Pa. Lumbermens Mutual Ins. Co., 385 Pa. 394, 123 A.2d 413 (1956), where the court pointed out that "double insurance exists only where there are two or more insurance policies covering the *same interest,* the same subject matter and against the same risk." (Emphasis supplied.) In the case before us, while the two policies cover the same subject matter, that is the dwelling house, and the same risk or hazard, which is fire, they quite clearly cover different, separate and distinct interests. The case of Hensley v. Farm Bureau Mutual Ins. Co. of Arkansas, 243 Ark. 408, 420 S.W. 2d 76 (1967), involved a so-called proration clause which is very similar, if not identical, in all pertinent respects to the clause contained in plaintiff's policy. In that case, the court pointed out that the vendor and vendee had separate insurable interests and the seller's carrier was liable for the full amount of its policy. Also in Atlantic Insurance Co. v. Massey, 381 F.2d 520 (1967), the Court of Appeals for the Tenth Circuit held that the insurable interests of a builder and an owner are separate and distinct interests. Finally, in Vogel v. Northern Assurance Co., 219 F.2d 409 (1955), the Court of Appeals for the Third Circuit held that under Pennsylvania law a purchaser under a contract to sell realty has a separate, insurable interest which is distinct from that of his seller and which prevents proration under such a clause. For all of these reasons, we are of the opinion that defendant is not entitled to prorate plaintiff's damages and the rejection of its offer of such proof was correct.

Defendant, however, relies on the case of Insurance Co. of North America v. Alberstadt, 383 Pa.

556, 119 A.2d 83 (1956). We are of the opinion that that case can be distinquished from the one before us. In that case, the property owners interest was *involuntarily* transferred by virtue of a delinquent tax sale. What's more, her interest had not been redeemed within the redemption period and was lost. In that case, the court placed emphasis on the fact that if the purchaser were permitted to recover the full amount of his own insurance, he would receive an amount which was greater than his actual loss. That is not the situation in this case. If plaintiffs here are paid the verdict which the jury has rendered in their favor and they then pay the balance of the purchase price to the Millers, they will receive a deed for the property which, at this time, contains an empty foundation. After paying the Millers and receiving the deed for the property, it will still be necessary for the Mecchias to construct a new and comparable home on the lot. The amount of money left to them out of the verdict after paying the balance of the purchase price will only be sufficient to make a down payment and it will still be necessary to obtain a substantial mortgage to complete such construction. Thus, the Mecchias, unlike the purchaser in Alberstadt, will not receive an economic gain or any unjust enrichment, but, on the contrary, will receive only sufficient funds to make them whole, which is what they paid their premium for. For these reasons, we are of the opinion that defendant is not entitled to proration.

## REPLACEMENT COST

Defendant also argues, as we understand it, that their liability is limited to the actual cash value of the dwelling which was less than the replacement

cost of the building. This argument is based upon that portion of the policy designated "Additional Conditions" which provides for "Replacement Cost—Coverages A and B." Subparagraph (f) provides that:

"The named insured may elect to disregard this condition in making claim hereunder, but such election shall not prejudice the named insured's right to make further claim within 180 days after loss for any additional liability brought about by this policy condition."

Defendant argues in its brief that "the insureds were required to repair or replace within 180 days after the date of loss. They did not repair or replace the property within the permitted time, and therefore, waived their right to replacement cost coverage." We do not read subparagraph (f) to require that the work be done within 180 days as does defendant. On the contrary, the policy provides that defendant insures the Mecchias "to the extent of the actual cash value of the property at the time of the loss, but not exceeding the amount which it would cost to repair or replace the property with material of like kind and quality *within a reasonable time* after such loss." As we read the policy, the insureds are entitled to the replacement cost at the prices prevailing within a reasonable time after the loss occurred. The evidence showed that such cost exceeded the amount of the coverage provided. We do not find in the policy, as does defendant, a requirement that the building actually be reconstructed or replaced within 180 days to justify recovery of the replacement cost. In this case, the parties became embroiled in a dispute over the question of proration and the amount of the claim and the proper computation thereof. As a

result, plaintiffs did not have the necessary finances to make such construction. It is interesting to note that the carrier had the right to rebuild the dwelling itself but chose not to do so. Finally, it was necessary for the insureds to resort to this action to resolve the dispute which existed between them and defendant. To now resolve that dispute in defendant's favor would be to ignore those principles that require liberal interpretation in favor of the insured. We are of the opinion that the trial court properly instructed the jury that plaintiffs were entitled to recover under the provisions of the policy the necessary replacement cost to be computed within a reasonable time after the loss occurred.

For all of these reasons, defendant's motion for a new trial was denied.