LIBERTY MUTUAL INSURANCE
COMPANY, Plaintiff,

v.

HOME INSURANCE COMPANY,
Defendant.

Civ. A. No. 80–402.

United States District Court,
W.D. Pennsylvania.

March 26, 1984.

Arthur R. Gorr, Pittsburgh, Pa., for plaintiff.

George I. Buckler, Pittsburgh, Pa., for defendant.

## OPINION

TEITELBAUM, Chief Judge.

In this action Liberty Mutual Insurance Company (Liberty Mutual) seeks recovery of sums it paid on behalf of its insureds in the settlement and defense of a personal injury action. The case was tried to a jury which returned a liability verdict for Liberty Mutual. Presently before the Court are cross motions to mold the verdict as to damages.

The underlying action was for injuries sustained by a child when her pajamas caught on fire. The pajamas had been manufactured by Stone Manufacturing Co., Inc. (Stone) and sold at retail by G.C. Murphy Co. (Murphy); the fabric had been manufactured by M. Lowenstein & Sons, Inc. (Lowenstein).

Lowenstein had a $300,000 liability insurance policy with Home Insurance Company (Home); Stone had a $500,000 liability insurance policy with Liberty Mutual; Murphy had a $40,000 liability insurance policy with Liberty Mutual. The Home policy on Lowenstein contained an endorsement naming vendors of Lowenstein's fabric as additional insureds for covered losses. Thus the Home policy, through its vendor's endorsement, insured Stone and Murphy for covered losses in connection with the sale of Lowenstein's fabric. The Liberty Mutual policy on Stone contained an endorsement naming vendors of Stone's products as additional insureds for covered losses. Thus the Liberty Mutual policy on Stone, through its vendor's endorsement, insured Murphy for covered losses in connection with the sale of Stone's products. Each of the three policies contained a clause which provided for sharing losses if there is other insurance.

The underlying personal injury action settled with Liberty Mutual paying $146,000 on behalf of Stone and $20,000 on behalf of Murphy. Liberty Mutual paid $26,482.93 to defend the action against Stone and Murphy. Home had refused Liberty Mutual's demands to settle on behalf

of Stone and Murphy, but offered to share ⅜ of Liberty Mutual's defense costs. The jury found Home acted in bad faith with respect to its obligations to Stone and Murphy.

In Liberty Mutual's motion to mold the verdict, it seeks the $166,000 it paid to settle the action against Stone and Murphy; plus the $26,482.93 it paid to defend Stone and Murphy; plus 6% interest per year from April 9, 1981, the date it paid the settlement and defense costs; plus its counsel fees in this action.

In Home's motion to mold the verdict, it asserts it owes only ⅜ of ½ of the $146,000 Liberty Mutual paid to settle the action against Stone and only ³⁄₈.₄ of ½ of the $20,000 Liberty Mutual paid to settle the action against Murphy; only ⅜ of the $26,-482.93 Liberty Mutual paid to defend Stone and Murphy; no prejudgment interest; and no counsel fees in this action.

Liberty Mutual contends it is entitled to the full cost of settlement and defense. Liberty Mutual contends the vendor's endorsement in the Home policy provides specific coverage to Stone and Murphy for losses resulting from defective fabric manufactured by Lowenstein. Liberty Mutual further contends its policies on Stone and Murphy provide general liability coverage. Liberty Mutual argues Home's specific coverage is prior and must be exhausted before its general coverage is reached.

In the alternative, Liberty Mutual contends if the three policies are concurrent, under the contribution by equal shares provisions of the other insurance clauses in the policies, it is entitled to ½ of the $146,-000 paid to settle the action against Stone; ⅓ of the $20,000 paid to settle the action against Murphy; and apportioning the cost of defense equally between Stone and Murphy, ½ of the amount expended to defend Stone, and ⅓ of the amount expended to defend Murphy. Liberty Mutual further contends no portion of the settlement is excluded from coverage under the Home vendor's endorsement.

Home contends it owes only a pro rata share of the cost of settlement and defense. Home contends the rule of priority of specific coverage, relied on by Liberty Mutual, is not applicable to the present case. Home contends specific coverage is prior only if there is damage to property owned by an insured which is covered under multiple policies and the insured makes a direct claim against his insurers. Home contends costs are shared under other insurance clauses if a third party charges an insured with liability which is covered under multiple policies and the insured then proceeds against his insurers, as in the present case.

Specifically with respect to Stone, Home contends under the contribution by limits provisions of the other insurance clauses in the policies, it owes only ⅜ of ½ of the $146,000 paid to settle the action against Stone. The fraction ⅜ is reached by comparing Stone's coverage under the Home policy ($300,000) to the total coverage on Stone under the Home ($300,000) and Liberty Mutual ($500,000) policies. This fraction (⅜) is then applied to ½ of the settlement on the assumption that ½ the claims against Stone were premised on allegations that the fabric was defective which Home concedes were covered under its policy and further that ½ the claims were premised on allegations that Stone failed to warn of the flammable properties of the fabric which Home contends were excluded from coverage under its vendor's endorsement.

With respect to Murphy, Home contends under the contribution by limits provisions of the other insurance clauses in the policies it owes only ³⁄₈.₄ of ½ of the $20,000 paid to settle the action against Murphy. The fraction ³⁄₈.₄ is reached by comparing Murphy's coverage under the Home policy ($300,000) to the total coverage on Murphy under the Home ($300,000) and Liberty Mutual ($500,000 + $40,000) policies. This fraction (³⁄₈.₄) is then applied to ½ of the settlement based on the assumption of covered and excluded claims outlined above.

With respect to the cost of defense Home concedes it owes coverage for all claims; because the costs attributable to Stone and

Murphy were not segregated, Home had agreed to pay ⅜ of $26,482.93.

The issues are first, whether this is a case of double insurance in which the other insurance clauses are given effect; second, if so, whether contribution is by equal shares or by limits; and third whether any portion of the settlement is excluded from coverage under Home's vendor's endorsement.

### Other Insurance

■ Double or other insurance exists where there are two or more insurance policies covering the same interest, the same subject matter and against the same risk. *Blue Anchor Overall Co. v. Pa. Lumbermens Mutual Ins. Co.*, 385 Pa. 394, 398, 123 A.2d 413, 415 (1956). If there is double or other insurance the other insurance clauses are given effect.

■ There is no double insurance, and hence no apportionment among insurers, if there are specific and general policies covering the damaged property. *Sloat v. Royal Ins. Co.*, 49 Pa. 14 (1865). The specific policy must first pay in full, and if it is not sufficient to cover the loss, the general policy pays the difference up to the amount of the policy. *Blue Anchor Overall Co. v. Pa. Lumbermens Mutual Ins. Co.*, 385 Pa. at 399; 123 A.2d at 416.

The cases cited by the parties shed little light on the issue of whether this is a case of double insurance or priority of specific insurance. *Grasberger v. Liebert and Obert*, 335 Pa. 491, 6 A.2d 925 (1939) discusses the effect of escape and excess clauses in the context of double insurance.

In *Great Atlantic and Pacific Tea Co. v. Pepsi Cola Bottling*, 209 F.Supp. 629 (E.D. Ill.1962) injury plaintiffs recovered a judgment and settlement from the defendant retailer of an exploding bottle. The retailer had coverage under a liability policy and, through a vendor's endorsement, under the manufacturer's policy. The cost of the judgment and settlement and the cost of defense were prorated between the two

insurers under other insurance clauses. Home cites this case as authority for its position that the rule of priority of specific insurance is not applicable in the context of a third party liability claim.

Two flaws weaken Home's argument. First, the cited case is a statement of Illinois law and Home offers no proof that Illinois follows what has been called the "Pennsylvania Rule" [1] on the priority of specific coverage. Second, in the cited case the retailer did not attempt to obtain full coverage under the vendor's endorsement in the manufacturer's policy; it sought only a proportionate share. Thus, the issue of priority of specific insurance raised by Liberty Mutual in the present case was neither presented nor considered in the cited case.

*White Cross Stores, Inc. v. Hartford Ins. Co.*, 312 Pa.Super. 73, 458 A.2d 242 (1983), also cited by Home as authority for its position that priority of specific insurance is not applicable in a third party liability action, although a statement of Pennsylvania law, suffers from the same flaw as the prior case. In *White Cross Stores*, an injury plaintiff recovered a settlement from the defendant retailer of a defective syringe. The retailer had coverage under a liability policy and, through a vendor's endorsement, under the manufacturer's policy. The retailer filed suit against the manufacturer's insurer for indemnity for "one half the amount expended by way of settlement and one half of the costs of defense— or whatever pro rata distribution may be appropriate ..." Thus the retailer did not attempt to obtain full coverage and the issue of priority of specific insurance was not addressed.

Home also cites *Ohio Farmers Ins. Co. v. Langfried*, 348 F.Supp. 486 (W.D.Pa. 1972). In that case an accident arose from the use of a police car and the loss was covered under a comprehensive liability policy and under an automobile liability policy. The policies were held concurrent and the costs were prorated under the other insur-

---

1.  16 Couch on Insurance § 62:59 (2d ed. 1983).

ance clauses. Although this result supports Home's position, it was reached without discussion and thus provides little guidance.

Liberty Mutual cites *W.T. Grant Co. Inc. v. U.S.F. & G. Ins. Co.*, 279 Pa.Super. 591, 421 A.2d 357 (1980). In that case injury plaintiffs recovered a settlement from the defendant retailer of a defective swimming pool. The retailer had coverage under a liability policy and, through a vendor's endorsement, under the manufacturer's policy. The cost of the settlement and the cost of defense were recoverable from the manufacturer's insurer. Although this result supports Liberty Mutual's position, it was reached without discussion and, like the prior case, provides little guidance.

Home cites *Mattocks v. Daylin*, C.A. No. 76–147 Erie (W.D.Pa. May 29, 1980). In that case injury plaintiffs had filed suit against the defendant manufacturer of flammable pajamas and others. The pajama manufacturer had coverage under a liability policy and, through a vendor's endorsement, under a policy issued to the manufacturer of the flammable fabric. It had previously been determined that the insurer of the fabric manufacturer was liable for the defense costs of the pajama manufacturer. In the matter before the court, the insurer's contention that its policy should be prorated with the pajama manufacturer's own policy was rejected as not timely. The court stated: "It is not necessary for our present purposes to recite the language of [this insurer's] other insurance clause. It is a standard provision, there is no doubt about its meaning or the effect it would have had if it were raised timely in the prior proceeding." While this statement tells something about the expectation of courts with regard to coverage in these circumstances, just as the demand for a proportionate recovery in *Great Atlantic and Pacific Tea Co.* and *White Cross Stores, Inc.* cases tells something about the expectation of litigants, the absence of discussion on this point does not aid the present inquiry.

Liberty Mutual cites *United National Ins. Co. v. Philadelphia Gas Works*, 221 Pa.Super. 161, 289 A.2d 179 (1972) as an application of the rule of priority of specific insurance in the context of a third party liability action. In that case the gas company's insurer sought to recover from the gas company sums paid to claimants injured through the gas company's negligent operation of a rented vehicle. The insurer relied on a clause providing that its coverage was excess over other insurance and contended the gas company had other insurance by reason of a certificate of self-insurance. The court held the certificate of self-insurance was not insurance under the other insurance clause, and if it were, it did not cover rented vehicles. The loss which occurred was from a rented vehicle, the certificate of insurance did not cover losses from rented vehicles, and thus there was no other insurance covering the loss. The court's characterization of the certificate of insurance as a blanket policy was, at best, gratuitous because the certificate did not cover the loss which occurred. This was not a case of specific and general coverage of a loss.

This Court's research has disclosed one case under which the results of all, but one,[2] of the cases discussed above can be harmonized: *Miller v. Home Ins. Co.*, 108 Pa.Super. 278, 164 A. 819 (1933). In *Miller* the plaintiff had two policies covering his home and barn: the first insured against loss by tornado, the second against loss by fire and tornado. Each policy contained a clause providing for proration with other insurance. Plaintiff's home and barn were damaged by a tornado.

The issue framed by the *Miller* court was "whether there was such double insurance on the property as limits the liability of the defendant [insurer which covered loss by tornado] to a pro rata share of the loss sustained." Double insurance was defined as two or more policies on the same interest, the same subject and against the same risk. The interest and subject were

---

2. *W.T. Grant Co. Inc. v. U.S.F. & G. Ins. Co.*, 279 Pa.Super. 591, 421 A.2d 357 (1980).

identical. The court next asked "Is the same risk assumed by the insurers in the two policies?" The court answered that both policies insured against the same risk, loss by tornado. Thus, the court concluded there was double insurance and each insurer was liable for a pro rata share of the loss.

In reaching this conclusion the *Miller* court analyzed *Sloat v. Royal Ins. Co.*, 49 Pa. 14 (1865); *Clarke v. Western Assurance Co.*, 146 Pa. 561, 23 A. 248 (1892); and *Meigs v. Ins. of North America*, 205 Pa. 378, 54 A. 1053 (1903). In each of these cases one policy covered specific property and a second policy covered the specific property plus other property; in each case it was held that there was not identity of subject matter and hence no double insurance. The *Miller* court held it was error to analogize from the lack of identity of subject matter in these cases to conclude there was no identity of risk where one policy covered loss by tornado and the second loss by fire and tornado.

In the case at bar Liberty Mutual urges this Court to make the jump in reasoning *Miller* proscribes. Liberty Mutual urges this Court to draw upon *Sloat v. Royal Ins. Co.* and its progeny and conclude that there is no identity of risk where the Home policy covered loss from defective fabric and the Liberty Mutual policy covered losses generally. As discussed above Liberty Mutual cites no specific authority for this position, the cases cited by Home indicate that courts and litigants have a contrary expectation when dealing in this area, and *Miller* expressly rejects the argument.

Therefore the Court finds the Home and Liberty Mutual policies cover the same interest, the same subject matter and the same risk. Thus there is double or other insurance and the other insurance clauses will be given effect.

*Contribution by equal shares or by limits*

Having determined that the other insurance clauses will be given effect, it is necessary to determine whether contribu-

tion is by equal shares or by limits. The Home policy and the two Liberty Mutual policies each contain identical other insurance clauses.

6. Other Insurance. The insurance afforded by this policy is primary insurance, except when stated to apply in excess of or contingent upon the absence of other insurance. When this insurance is primary and the insured has other insurance which is stated to be applicable to the loss on an excess or contingent basis, the amount of the company's liability under this policy shall not be reduced by the existence of such other insurance.

When both this insurance and other insurance apply to the loss on the same basis, whether primary, excess or contingent, the company shall not be liable under this policy for a greater proportion of the loss than that stated in the applicable contribution provision below:

(a) Contribution by Equal Shares. If all of such other valid and collectible insurance provides for contribution by equal shares, the company shall not be liable for a greater proportion of such loss than would be payable if each insurer contributes an equal share until the share of each insurer equals the lowest applicable limit of liability under any one policy or the full amount of the loss is paid, and with respect to any amount of loss not so paid the remaining insurers then continue to contribute equal shares of the remaining amount of the loss until each such insurer has paid its limit in full or the full amount of the loss is paid.

(b) Contribution by Limits. If any of such other insurance does not provide for contribution by equal shares, the company shall not be liable for a greater proportion of such loss than the applicable limit of liability under this policy for such loss bears to the total applicable limit of liability of all valid and collectible insurance against such loss.

Liberty Mutual contends the settlement and defense costs should be shared equally with Home contributing ½ of the amounts expended on behalf of Stone, based on two contributing policies, and ⅓ of the amounts expended on behalf of Murphy, based on three contributing policies.

Home contends the costs should be shared according to the proportion that the limits of each policy bears to the combined limits of all policies. As explained above Home thus contends it owed ⅜ of the covered loss of Stone and ⅜.₄ of the covered loss of Murphy, and ⅜ of the costs of defense.

In *Employers Casualty Co. v. Employers Commercial Union Ins. Co.*, 632 F.2d 1215 (5th Cir.1980) the court addressed the identical issue:

The method of allocating coverage in the two policies is the same. Each says that if the other policy provides for equal sharing, then the liability will be shared equally. Each policy also says that if other insurance does not provide for equal contribution, then a pro-rata or proportionate method applies. In this case both policies show a preference for contribution by equal shares. The district court did not err in apportioning the ... coverage equally...

632 F.2d at 1220. *Accord McDaniels v. Great Atlantic & Pacific Tea Co.*, 602 F.2d 78, 83 (5th Cir.1979); *contra Georgia Casualty and Surety Co. v. Universal Underwriters Ins. Co.*, 534 F.2d 1108 (5th Cir.), *reh. denied*, 539 F.2d 710 (1976) (*but see* 8A Appleman, Insurance Law and Practice § 4908 n. 8 at 375 (1981): "As the dissent correctly points out in criticizing this opinion which ignores the insured's intent....")

Although there are no Pennsylvania cases addressing this issue, it is believed that the Pennsylvania courts would join the recent decisions of the Fifth Circuit and apportion coverage equally. Accordingly the contribution by equal shares provision will be given effect.

Specifically, with respect to the settlement on behalf of Stone, Liberty Mutual is entitled to recover ½ of the covered loss from Home. This fraction (½) is based on Stone's coverage under two policies: the coverage under the Home policy through the vendor's endorsement and the coverage under the Liberty Mutual policy on Stone. With respect to the settlement on behalf of Murphy, Liberty Mutual is entitled to recover ⅓ of the covered loss from Home. This fraction (⅓) is based on Murphy's coverage under three policies: the coverage under the Home policy through the vendor's endorsement, the coverage under the Liberty Mutual policy on Stone through the vendor's endorsement, and the coverage under the Liberty Mutual policy on Murphy.

Liberty Mutual did not segregate the cost of defense attributable to Stone from that attributable to Murphy, and has proved no basis for apportioning these costs. Although Liberty Mutual is clearly entitled to ⅓ of the cost of defense, it has failed to prove its entitlement to more than that amount with the degree of certainty required to sustain an award of damages. Thus Liberty Mutual is entitled to recover ⅓ of the cost of defense from Home.

### Exclusions

■ Having determined that the contribution by equal shares provisions of the other insurance clauses will be given effect, it is necessary to determine whether any portion of the settlement is excluded from coverage under Home's vendor's endorsement. Home contends one-half of the personal injury action against Stone and Murphy was premised on allegations that the fabric was defective which were covered under its policy, but that one-half the action was premised on allegations that Stone and Murphy failed to warn of the flammable properties of the fabric which were excluded from coverage under its vendor's endorsement.

Exclusion 1(b)(iv) of the vendor's endorsement in the Home policy excludes from coverage bodily injury arising out of products which after distribution or sale by the named insured (Lowenstein, the fabric manufacturer) have been labeled or rela-

beled. Home takes the position that this excludes losses arising out of Stone and Murphy's failure to label the pajamas warning the consumer of the flammable properties of the fabric.

Home's position is rejected for three reasons. First, the exclusion is ambiguous. Since the exclusion was drafted by Home it is construed against Home. *W.T. Grant Co., Inc. v. U.S.F. & G. Ins. Co.*, 279 Pa.Super. at 597, 421 A.2d at 360. Second, even if the exclusion were clearly applicable, the settlement cannot fairly and accurately be apportioned between the covered and excluded claims. Home advances an arbitrary one-half to one-half apportionment. Liberty Mutual contends Stone and Murphy did not have notice that the fabric was flammable and therefore could not have warned about this property; thus Liberty Mutual contends its exposure to liability on this theory was insubstantial. This is not the case of a jury verdict in the personal injury action in favor of Lowenstein and against Stone and Murphy from which it could be inferred that the verdict was grounded in an independent wrong of Stone and Murphy.[3] Third, allegations of defective products are frequently coupled with allegations of failure to warn in products liability actions; thus a rule of exclusion would result in substantially less coverage in those situations.

### Prejudgment Interest

Liberty Mutual seeks prejudgment interest from the date of its payment of the settlement and defense costs. Liberty Mutual contends on that date the amount payable was liquidated and ascertainable. Home resists an award of prejudgment interest contending damages were unliquidated and could not be computed with mathematical certainty prior to this Court's molding the verdict.

■ Pennsylvania follows the common law rule that allow[s] damages in contract actions involving liquidated sums, true "prejudgment interest."

Common law prejudgment interest is based on the principle of compensation and the understanding that a plaintiff wrongfully deprived of a sum of money is not made whole unless the delay in recovery is accounted for. Prejudgment interest in Pennsylvania contract cases is a matter of right and is calculated from the time the money becomes due or payable.

*American Enka Co. v. Wicaco Machine Corp.*, 686 F.2d 1050, 1056 (3d Cir.1982). The award of contract prejudgment interest is mandatory. *Id.* at 1057.

■ "A debt is considered liquidated when it is capable of ascertainment with mathematical precision, or ... 'by market value or other definite standards,' and a dispute between two amounts so ascertained does not alter its liquidated character." *Id.* In the pretrial posture of this case, Liberty Mutual demanded full coverage and Home asserted it owed only ⅜ of the defense costs, and at most ⅜ of the settlement paid on behalf of Stone and ⅜.₄ of the settlement paid on behalf of Murphy.

Although Home contends its offer to share the cost of defense relieves it of prejudgment interest as to this item, Home did not pay this amount into Court and therefore the offer did not constitute a sufficient tender to stop the running of interest. See *Gold & Co., Inc. v. Northeast Theater Corp.*, 281 Pa.Super. 69, 421 A.2d 1151, 1155 (1980).

For the foregoing reasons, Liberty Mutual will be awarded prejudgment interest.

### Counsel Fees

■ Liberty Mutual is entitled to the reasonable attorney's fees and costs incurred in bringing this action. Under Pennsylvania law attorney's fees may be awarded to the prevailing party in a declaratory judgment action where the circumstances show the refusal to defend was in bad faith or unreasonable. *Mattocks v. Daylin*, 452 F.Supp. 512, 516 (W.D.Pa.),

---

3. In fact, the only jury to consider this matter, when faced with Home's defense that it relied on this exclusion in refusing to indemnify Liberty Mutual, found Home acted in bad faith.

*aff'd*, 614 F.2d 770 (1978). The jury found Home acted in bad faith in its denial of its obligations to Stone and Murphy.

In an effort to reach an amicable resolution of this issue, counsel are directed to confer with each other with an end to entering into a stipulation as to fair and reasonable counsel fees for the prosecution of this action.

An appropriate order shall issue.

## ORDER

AND NOW March 26, 1984 in accordance with the foregoing memorandum opinion, IT IS HEREBY ORDERED that judgment is entered for Liberty Mutual Insurance Co. and against Home Insurance Company in the amount of $88,494.31 plus six (6) percent interest per year from April 9, 1981.

IT IS FURTHER ORDERED that Liberty Mutual Insurance Company is awarded counsel fees in the prosecution of this action in an amount to be set by further Order of Court.