ST. PAUL FIRE AND MARINE INSURANCE COMPANY

v.

INSURANCE PLACEMENT FACILITY OF PENNSYLVANIA, et al.

Civ. A. No. 87–1234.

United States District Court, E.D. Pennsylvania.

April 29, 1988.

M. Stuart Goldin, Cozen and O'Connor, Philadelphia, Pa., for plaintiff.

Christopher P. Leise, Philadelphia, Pa., for Ins. Placement Facility of Pennsylvania.

Daniel B. Pierson, V, Victor A. Young, Weiss, Golden and Perison, Philadelphia, Pa., for George and Vera Falus, Jack and Vilma Collins.

## MEMORANDUM

CLIFFORD SCOTT GREEN, District Judge.

Plaintiff St. Paul Fire and Marine Insurance Company ("St. Paul") commenced the above captioned declaratory judgment action in order to determine the respective share of liability between it and Insurance Placement Facility of Pennsylvania ("the Fair Plan") with respect to fire damage caused to property insured under policies issued by both companies. Besides the Fair Plan, the buyers and sellers of the insured property are named as defendants. Counterclaims and cross claims have been filed by various parties. The matter has been submitted to the court for nonjury determination based upon stipulated record facts.

The facts of this lawsuit as stipulated by the parties are as follows: In October, 1986, Jack and Vilma Collins together with George and Vera Falus (collectively "the buyers") entered into an agreement with Peter N. Harrison, Administrator of the Estate of Anthony A. Fanelli, and Harry Waldron, Executor of the Estate of Frederick W. Waldron (collectively "the sellers") to purchase commercial property ("the property") located in Pennsylvania. At the time of the agreement's execution, the buyers were tenants of the sellers. Defendant Vera Falus owned and operated a retail food business on the site of the property and Jack and Vilma Collins maintained a jewelry shop. About November 5, 1986, the sellers obtained $210,000 worth of fire insurance coverage from the Fair Plan. About December 23, 1986, the buyers obtained $250,000 worth of all risk business owners' insurance from St. Paul. On or about December 26, 1986, the property was damaged by fire. As a consequence of the fire, the closing of the purchase contract was postponed until May 21, 1987 at which time the buyers took title to the property and the sellers assigned to buyers their right to insurance proceeds from the Fair Plan. The property was neither repaired nor replaced and the buyers were forced to discontinue their businesses on the property.

St. Paul seeks an order adopting its position that since the fire insurance policy originally issued to the sellers of the property constitutes other insurance and since said policy contains a pro rata apportionment clause while its policy contains an excess coverage clause, St. Paul's liability is limited to the provision of excess coverage while Fair Plan is required to provide primary coverage. In addition, St. Paul asserts that Fair Plan is liable for the actual cash value of the loss and St. Paul is only liable for the difference between the actual cash value of the loss and the replacement cost of the loss, but only upon actual replacement.

Fair Plan in turn argues that since the buyers are entitled to only one recovery, that payment of the loss must be prorated between St. Paul and the Fair Plan as mandated by statute. Furthermore, the Fair Plan contends that the St. Paul policy specifically provides for insurance coverage on an actual cash value basis.

The buyers assert three points in their briefs. First, they argue that the interest of the buyer and the seller are legally distinct and separately insurable, and hence the "other insurance" clauses in both insurers' policies do not apply. Second, they maintain that any ambiguity in the policy of either insurer must be construed in the insureds' favor. Finally, the buyers contend that they are entitled to replacement cost.

█ Sitting in diversity, this court must apply the substantive law of the forum state Pennsylvania, *Erie Railroad v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *Wilson v. Asten-Hill Manufacturing Co.*, 791 F.2d 30, 32 (3d Cir.1986).

Pertinent to the court's disposition of the dispute among the parties is the presence of an apportionment clause in each policy of insurance. The Fair Plan policy contains an apportionment provision which provides for pro rata contribution in the event of double coverage, while the St. Paul policy contains the following "Other Property Insurance" clause:

Other Property Insurance

Other insurance may be available to cover a loss. If so, we'll pay the amount of loss that's left after the other insurance has been used up, less the deductible. But we won't pay more than the limit of coverage that applies.

(Stipulation of Facts, p. 5).

In order for either apportionment clause to be operative, "other insurance" must exist. This occurs only where there are two or more policies covering the same interest, the same subject matter, and the same risk. *Blue Anchor Overall Co. v. Pennsylvania Lumbermens Mutual Insurance Co.*, 385 Pa. 394, 398, 123 A.2d 413, 415 (1956). In the present case, the policies in question both cover the same property and the risk of fire loss. The key issue is whether the policies cover the same interest. Other insurance clauses have no application where the policies cover distinct insurable interests in the property.

In Pennsylvania, the risk of loss to real property caused by fire or other peril is on the buyer, unless shifted by the parties in their agreement. Nonetheless, both the buyer and the seller may take out insurance policies to cover a loss which occurs prior to the conveyance of the property. The seller may cover his or her legal interest in the title, which is held as security for the payment of the unpaid purchase money, and the buyer may cover his or her interest as equitable owner. *Patrick & Wilkins Co. v. Reliance Insurance Co.*, 500 Pa. 399, 456 A.2d 1348 (1983).

These interests of the buyer and seller are considered separate and distinct insurable interests. *Vogel v. Northern Assurance Co.*, 219 F.2d 409, 413 (3d Cir.1955); *Reliance Insurance Co. v. Allstate Indemnity Co.*, 514 F.Supp. 486, 488 (E.D.Pa. 1981), *aff'd without op.*, 681 F.2d 808 (3d Cir.1982). Thus, an insurance policy held by a vendor of insured property would not normally qualify as other insurance in relation to a policy taken out by the vendee on said property.

In the instant case, the sellers assigned their interest in the policy issued by Fair Plan to the buyers. As a consequence of

the assignment, the buyers now possess two policies of fire insurance under which they seek to collect. The *Vogel* case presents a virtually identical factual scenario. In *Vogel,* the seller and buyer of real property each purchased fire insurance on the property which was the subject of the purchase agreement. The buyer obtained a policy worth $9,000.00, and the seller, one worth $6,000.00. The house was damaged by fire prior to the conveyance, and the seller assigned his claim under the fire policy to the buyer. The damage attributable to the fire totalled $12,000.00. The Third Circuit decided that under Pennsylvania law the other insurance clause was inapplicable because the policies covered two distinct and separate insurable interests. The court cited the rule that other insurance clauses must cover the same interest to be applicable. Applying Pennsylvania law, the *Vogel* court upheld a lower court ruling which permitted the buyer to recover the full amount under each policy of fire insurance. Although the Third Circuit considered this result inconsistent with the principle of limiting recovery on a loss to indemnification, it believed that Pennsylvania legal precedent compelled this outcome.

However, in light of the ruling by the Pennsylvania Supreme Court in *INA v. Alberstadt,* 383 Pa. 556, 119 A.2d 83 (1956), the double recovery permitted by the *Vogel* court could not stand today. In *Alberstadt,* the defendant Alberstadt, owner of the property, obtained fire insurance coverage for a parcel of real property that was subsequently sold at a sheriff's sale to recoup unpaid property taxes. The successful bidder at the sale also took out fire insurance on the property. When a fire occurred damaging the property, both Alberstadt and the purchaser demanded recovery under their respective policies. The lower court awarded judgments which in aggregate exceeded the loss caused by the fire. The insurance companies appealed, and expressed their willingness to pay pro rata shares up to the amount of the loss.

On appeal, the Pennsylvania Supreme Court first determined that although Alberstadt as the holder of legal title was entitled to collect proceeds under her own policy of insurance, she held all proceeds in trust for the subsequent purchaser. In addition, the court held that the purchaser was not entitled to recover twice; he could not recover from his insurer as well as the original owner's insurer and thus gain a windfall. Stated the court, "Since the fire insurance is only a contract of indemnity and its object is not to permit a gain by the insured but only to compensate him for a loss, it is obvious that he cannot recover insurance in an amount greater than the loss which he sustained." 383 Pa. at 561, 119 A.2d at 86. Recovery by the buyer, therefore, was limited to the total loss sustained as a result of the fire.

The court then considered which insurer should pay the loss and concluded that the insurers should each contribute a pro rata share. In reaching this conclusion the court recognized the validity of separate policies covering separate interests but limited the buyer to a recovery which did not exceed the limits of his loss. Thus, instead of a double recovery in excess of the loss suffered, the insured was limited to a single recovery prorated between the insurers.

The court in *Alberstadt* was merely striving to achieve a just result that required insurers within the limits of their policies to share the payment of the loss, thereby removing the possibility of the insured realizing a windfall from the fire. *Accord, Smith v. Prudential Property and Casualty Insurance Co.,* 508 F.Supp. 452, 454 (W.D.Pa.1980). The court's decision in favor of proration conforms to Pennsylvania public policy. This policy is aptly expressed in the much earlier case, *Thurston v. Koch,* 4 U.S. (4 Dall.) 348, 1 L.Ed. 862, 23 F.Cas. no. 14,016, p. 1183, 1185 (C.C.D.Pa.1800) (quoting *Godin v. The London Assurance Co.,* 97 Eng Rep 419, 420 (K.B. 1758) (Mansfield, L.J.)):

"Before the introduction of wagering policies, it was, upon principles of convenience, very wisely established, 'that a man should not recover more than he had lost.' Insurance was considered as an indemnity only, in case of a loss; and

therefore, the satisfaction ought not to exceed the loss. This rule was calculated to prevent fraud; lest the temptation of gain should occasion unfair and wilful losses. *If the insured is to receive but one satisfaction, natural justice says that several insurers shall all of them contribute pro rata, to satisfy that loss against which they have all insured."* (Emphasis supplied.)

 Under this analysis "other insurance" and proration clauses are not controlling because separate interests were insured and hence, "other insurance" is not involved. Accordingly, both St. Paul and Fair Plan shall prorate their payments not to exceed the limits of their respective policies. Since the limit on the St. Paul policy is $250,000 and that on Fair Plan's is $210,000, which total $460,000, St. Paul is liable for 25/46 of the total actual value of the loss and Fair Plan the remainder.

Next, we note that the St. Paul policy contains the following provision:

Replacement cost. Unless otherwise indicated, we'll pay the cost of repairing or replacing damaged property without deduction for depreciation. But we won't pay more than the smallest of the following:

1. the limit of coverage that applies to the property;

2. the amount you actually spend in repairing or replacing the property with property of similar kind and quality; or

3. the amount it would cost to replace the damaged item at the time of loss with property of similar kind and quality to be used for the same purpose on the same site.

Not replacing the property. You don't have to replace property on the same site. But we won't pay on a replacement cost basis until property has actually been replaced. If you decide not to replace the property, you must tell us of your decision within 180 days of the loss. If the property is not replaced we'll pay you on actual cash value basis.

(Stipulation of Facts, pp. 5–6).

 St. Paul has argued that it should not be required to pay the buyers for replacement cost pursuant to the provisions of its policy until replacement is actually complete. However, the above provision also permits a calculation of loss on an actual cash value basis where the actual cash value is merely a part of the replacement value of the loss. At present, there is no evidence that replacement has actually occurred or that the buyers have actually complied with the replacement provision. Moreover, since the Fair Plan policy does not carry a replacement cost provision, there is no legal basis for requiring Fair Plan to share in any additional expenses incurred by the buyers in replacing the insured property. Thus, upon compliance with the St. Paul policy provision regarding replacement cost, buyers are entitled to recover from St. Paul the replacement cost in excess of the prorated actual cash value of the loss sustained.

An appropriate judgment follows.

## JUDGMENT

AND NOW, this 29th day of April, 1988, upon consideration of St. Paul Fire and Marine Insurance Company's complaint for a declaratory judgment, the counterclaims and cross claims filed together with the legal memoranda and oral argument of counsel, IT IS DECLARED, ADJUDGED AND DECREED that:

1. The insureds Jack and Wilma Collins and George and Vera Falus, defendants herein, are entitled to recover the actual cash value of the loss caused by fire damage to the insured property;

2. Plaintiff St. Paul and defendant the Insurance Placement Facility of Pennsylvania shall prorate payment of the actual cash value of the loss, less deductibles, in the following proportions: St. Paul shall pay 25/46 of the loss, and the Insurance Placement Facility of Pennsylvania shall pay 21/46 of the loss;

3. Upon compliance with the replacement cost provision of St. Paul's policy, the defendant insureds shall also be entitled to recover from St. Paul the replacement cost

in excess of the actual cash value of the loss.